Jasen, J.
At about 1:00 a.m. on October 7, 1968, a Cadillac operated by Albert Victory, with Robert Bornholdt as a passenger, sped through a red light on East 54th Street near Fifth Avenue in New York City. Patrolman John Varecha, a 25-year-old uniformed police officer on duty in the area, commandeered a taxicab and pursued the vehicle to Arthur’s Discotheque on East 54th Street near Third Avenue. In the course of investigating the incident, an altercation ensued between Varecha and Victory and Bornholdt, during which Bornholdt shot Ver echo four times at close range. He died enroute to Bellevue Hospital.
Indicted for intentional murder (Penal Law, § 125.25, subd. 1) (Bornholdt) and felony murder (Penal Law, § 125.25, subd. 3 [causing the death of a person during the commission of escape, second degree]) (Bornholdt and Victory), defendants were convicted of the crimes charged after a joint trial before a jury. *80 Bornholdt was sentenced to concurrent terms of imprisonment of 25 years to life, and Victory was sentenced to a term of 25 years to life. The Appellate Division unanimously affirmed and the appeals are before us by leave of an Associate Judge of this court.
On Victory’s appeal the principal issues are whether guilt was proven beyond a reasonable doubt, whether the affirmative defense in the felony murder statute is constitutional, whether the court properly denied a severance, and whether the court’s rulings limiting the use of prior statements on cross-examination were proper.
On Bornholdt’s appeal, the principal issues concern his competency at the time of trial, and at the time the crime was committed.[1]
The testimony at trial established that Patrolman Verecha arrived at Arthur’s Discotheque as the defendants were about to enter. He asked them who had been driving the Cadillac, which was parked at the curb, and demanded to see a registration and driver’s license.[2] The defendants were evasive and unco-operative. They then started up the steps to the discotheque, but Varecha blocked their entrance with his nightstick. The officer, holding Victory’s arm to prevent him from entering the discotheque, threatened to have the car towed away. Once again he asked who was driving and requested a registration and a driver’s license. Victory grabbed Varecha by the lapels of his raincoat and stated, “ Don’t you touch me ”, or words to that effect. An altercation ensued, during which Victory kneed the officer in the groin, doubling him over. Victory, now joined by Bornholdt, began punching and kicking the officer. Varecha fought back with his nightstick, striking the defendants about the head. Crouched over in pain, he drew his service revolver and told the defendants they were under arrest. Victory slowly backed up in a westerly direction toward Lexington Avenue,'his arms outstretched, imploring the officer to give him a ‘ ‘ break ’ ’. Varecha told him to stop and get against a car in the street, but *81 Victory kept backing up. Bornholdt was to the rear of the officer. Varecha again told the defendants that they were under arrest, and ordered them to get against an alley wall. A citizen came to the aid of the officer and was ordered out of the alley by the defendants. Victory, facing the alley wall with his hands extended, swung around and started fighting with the officer. Bornholdt jumped the officer from behind, drew a .32 caliber pistol, and in the course of the continuing altercation, discharged eight shots, four of which struck the officer, fatally wounding him. Bornholdt ran out of the alley, followed seconds later by Victory, who at first emerged slowly, his back to the westerly wall of the alley, arms extended. After a short chase, both defendants were apprehended by off-duty patrolmen who had been at the discotheque.
People v. Victory
Turning to defendant’s first point, he contends that he was not proven guilty beyond a reasonable doubt. We conclude that there was ample evidence, if believed, to prove all the elements of felony murder.
There was eyewitness testimony from which the jury could reasonably find that Victory kneed the officer in the groin (assault in the second degree, Penal Law, § 120.05, subd. 3)[3] and that Bornholdt joined in the assault; that Varecha drew his service revolver and told the defendants that they were under arrest (Code Crim. Pro., § 177, subd. I)[4] ; that both defendants continued to resist the restraint sought to be imposed by the officer and got away (escape in the second degree, Penal Law, § 205.10 )[5], and that in the course of and in furtherance of getting away, Bornholdt shot and killed the officer, a criminal act, the *82 responsibility for which, Victory, a participant in the underlying felony, must share. (Murder, Penal Law, § 125.25, subd. 3.)[6]
In a related point, Victory challenges the court’s supplemental instruction concerning the felony murder charge. He refers to the court’s supplemental instruction that “ flight after a lawful arrest by a policeman for the felony of assault in the second degree does constitute the crime of escape in the second degree, whether that flight takes place before or after the shooting.” The supplemental instruction was given in partial response to the following question asked by the jury foreman: “ As a matter of law, does the fact of flight after the shooting itself establish escape in the second degree after an arrest has been made for felony assault? ” He argues that the court erroneously conveyed the impression that the jury could convict of felony murder even if it determined that the defendant’s intent to escape arose after the shooting.
The governing principle is clear: a person may be convicted of felony murder only if it be proved that he or another participant in one of the enumerated felonies killed “ in the attempted execution of the unlawful end.” (People v. Wood, 8 N Y 2d 48, 51; see, also, People v. Joyner, 26 N Y 2d 106, 109; Penal Law, § 125.25, subd. 3.) The Trial Justice, obviously cognizant of this principle, repeatedly, both in the main charge and in the supplemental charge, instructed the jury that the shooting must have occurred “ during the course of ”, “in furtherance of ” and “ while ” committing the crime of escape. In sum, the court’s charge sufficiently informed the jury that if the defendant did not intend to escape at the time the killing occurred, it could not convict of felony murder..
Defendant next raises a constitutional challenge to the affirmative defense provisions of the felony murder statute. Section 125.25 (subd. 3) of the Penal Law provides that in a felony murder prosecution in which the defendant was not the only *83 participant in the underlying crime, ft is an affirmative defense that the defendant;
" “ (a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
“(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
“ (c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
“(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.”
The burden of .proof for affirmative defenses is specified in section 25.00 (subd. 2): “ When a defense declared by statute to be an ‘ affirmative defense ’ is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence.” That is to say, the defendant has the burden of going forward with the evidence on the issue as well as the burden of persuasion thereon, but merely by a fair preponderance of the evidence.
Defendant asserts that the statutory affirmative defense violates his constitutional privilege against self incrimination. Specifically, he contends that the affirmative defense provision impels a defendant to take the witness stand and, in effect, requires him to disprove any connection with the killing. While ■ couched in terms of the Fifth Amendment, defendant’s argument is more in the nature of a constitutional due process challenge with Fifth Amendment overtones.
The revised Penal Law worked a significant change in prior law by providing an accomplice of a felon who kills an affirmative defense to a felony murder charge. Under the former Penal Law, none of the above-enumerated elements constituted a defense to the crime of felony murder where the defendant had the requisite felonious involvement. (See, e.g., People v. Michalow, 229 N. Y. 325; People v. Friedman, 205 N. Y. 161; see, also, Comment, Affirmative Defenses Under New York’s New Penal Law, 19 Syracuse L. Rev. 44.) The harshness of *84 the rule in particular cases was apparent, and, hence, the instant provisions were incorporated in the revised Penal Law affording an accomplic- of a felon who kills an opportunity to “ fight his way out ” of a felony murder charge.
The affirmative defense provisions, generally, of the Penal Law altered the common-law concept of how such defenses were to be established. Traditionally, the defendant asserting a conventional affirmative defense had the burden of going forward with some evidence making the defense one of the issues in the case. (People v. Utica Daw’s Drug Co., 16 A D 2d 12, 18; see, also, People v. Egnor, 175 N. Y. 419; People v. Downs, 123 N. Y. 558.) The burden of persuasion, however, remained upon the People upon the whole case to negative the defense beyond a reasonable doubt. (People v. Sandgren, 302 N. Y. 331, 334; People v. Utica Daw’s Drug Co., supra.)
We recently had occasion to pass on the constitutionality of the affirmative defense of entrapment (Penal Law, §§ 40.05, 25.00, subd. 2) and upheld it against a due process challenge. (People v. Laietta, 30 N Y 2d 68.) We conclude that the affirmative defense provisions of the felony murder statute are also sustainable.
Due process imposes no impenetrable barrier to shifting the burden of persuasion to the defendant in a criminal case. Within the bounds of reason and fairness, a defendant may be expected to carry the burden of proving his defensive claim (e.g., Leland v. Oregon, 343 U. S. 790, 799). However, no single principle can be articulated to explain when these shifts of burden are constitutionally defensible (for attempts at articulation of a principle, see Rossi v. United States, 289 U. S. 89, 91-92; United States v. Fleischman, 339 U. S. 349, 360-363). Bather, what is involved is a subtle balance which acknowledges first that the prosecution adduce sufficient evidence to support the accusation. Beyond this, a point is perceived where it becomes fair to call upon the defendant to prove his claim of defense, as where there, is a “ manifest disparity in convenience of proof and opportunity for knowledge ”. (Morrison v. California, 291 U. S. 82, 91; see, also, People v. Laietta, supra, at p. 75.)
The components of the statutory defense before us are peculiarly within the knowledge of the defendant, and are matters upon which he may be fairly required to adduce supporting *85 evidence. For example, who better than the nonkiller defendant knows whether his confederates were armed or intended to engage in conduct dangerous to life, and can adduce evidence thereon. To require the prosecution to disprove these elements beyond reasonable doubt would unduly enlarge the scope of the prosecution’s proof and reduce whatever efficacy the felony murder statute has. On the other hand, casting upon the defendant the burden of persuasion by a preponderance of the evidence imposes no undue hardship or oppression. The fact that some pressure may thereby be exerted on the defendant to testify would not itself seem to establish unfairness. (See Yee Hem v. United States, 268 U. S. 178,185.)
Unlike the defense of entrapment, which merely interposes a bar to prosecution, a defendant’s claim for exoneration under the statutory defense before us goes, in the final analysis, to the guilt — to the rightness of punishing the accused. It recognizes, in effect, the unjustness of imposing criminal liability for consequences as to which there is no culpable mental disposition on the part of the accomplice defendant. (See B. Gregan, Criminal Homicide in the Revised New York Penal Law, 12 N. Y. Law Forum 565, 590; see, also, A. L. I. Model Penal Code, Tent. Draft No. 9 [1959], § 201.2, subd. [1], par. [b], Comments at pp. 33-39.) As such, it introduces a heretofore unknown mitigation into the harsh common-law doctrine of felony murder. By the same token, the statutory defense is inconsistent with the rationale of the doctrine itself which ascribes malice to the felon who kills in the perpetration of an inherently dangerous felony and holds an accomplice in the underlying act vicariously responsible under common-law principles of accessorial and conspiratorial liability. While the basic premises underlying the felony murder doctrine have been seriously questioned (see, e.g., A. L. I. Model Penal Code, Tent. Draft No. 9 [1959], § 201.2, subd. [1], par. [b], Comments at pp. 33-39, supra), the Legislature, as is its wont, has chosen to retain the doctrine’s basic underlying principle of constructive malice and accomplice liability. The exception or affirmative defense incorporated in the revised Penal Law was intended to be a narrow one. (R. Denzer and P. McQuillan, Practice Commentary, McKinney’s Cons. Laws of N. Y., Book 39, p. 237, under Penal Law, § 125.25.) That being the case, and considering the disparities in eon *86 venience of proof and opportunity for knowledge, it seems appropriate to shift the burden of persuasion to the defendant. (Cf. A. L. I. Model Penal Code, Tent. Draft No. 4 [1955], § 1.13, Comments at pp. 110-114, esp. at p. 113.)
Nor are the considerations fully applicable here which caused the court in Stump v. Bennett (398 F. 2d 111 [8th Cir.], cert, den. 393 U. S. 1001) to set aside, on due process grounds, the Iowa statute making alibi an affirmative defense. There the statute created insuperable evidentiary difficulties with respect to the burden of persuasion because the defense and the prosecution’s proof turned on a principal issue and the evidence on that isgue, namely, the defendant’s presence at the time and place of the crime. The court was of the view that by shifting the burden of proof to a person who claims to have been elsewhere when the crime was committed, an irrational and arbitrary presumption of guilt was created.. (398 F. 2d, at p. 116.) Here, no such difficulties of proof are presented. The prosecution need prove commission of the requisite underlying felony and, in the course thereof, that one of the participants caused the death of another person (other than one of the participants). The responsibility of all participants for the death caused in perpetrating the underlying crime is thereby established under the principles discussed above. The defendant’s burden is entirely different. It is incumbent upon him, by way of mitigation, to demonstrate that his culpability is relatively minor and that he should not be held answerable to a felony murder charge. In this regard, it is his burden to persuade the jury that he had “ nothing to do with the killing itself * * * was unarmed and had no idea that any of his confederates was armed or intended to engage in any conduct dangerous to life.” (R. Denzer and P. McQuillan, McKinney’s Cons. Laws of N. Y., Book 39, p. 237, under Penal Law, § 125.25.)
Turning next to the severance issue, on balance, we do not believe the trial court abused its discretion in denying the motion. The relevant facts are these. In a motion returnable on the same dafe the case was moved for trial and jury selection commenced, Victory moved for a severance. The alleged ground was that he intended to call his codefendant as a witness to introduce a statement, purportedly made by Bornholdt, exculpating Victory. The statement, which was unsigned, read: *87 “ Albert Victory had nothing to do with the shooting of the police officer on October 7,1968 outside the club Arthur. I alone did the shooting because the police officer had clubed [sic] me on the head and had pointed and fired his gun at me and Albert. Both Albert and I would have been killed by this police officer who had gone crazy and had clubed [sic] me and Albert and he was going to shoot us.” The court denied the motion, noting inter alla, that the statement was purely conclusory, and that the motion was untimely.
The governing principles may be quickly set out. A motion for a separate trial is directed to the sound discretion of the trial court, subject to review only for an abuse thereof. (People v. Owens, 22 N Y 2d 93; see, also, Opper v. United States, 348 U. S. 84, 95; United States v. Echeles, 352 F. 2d 892 [7th Cir.].) "Where proof against the defendants is supplied by the same evidence, only the most cogent reasons warrant a severance (United States v. Kahn, 381 F. 2d 824, 839 [7th Cir.], cert. den. 389 U. S. 1015). But upon a proper showing of need for a codefendant’s testimony, it may be an abuse of discretion to deny severance. (People v. Owens, supra, at p. 98; see United States v. Gleason, 259 F. Supp. 282 [S.D., N.Y.].) However, a proper showing of need imports that the movant clearly show what the codefendant would testify to and that such testimony would tend to exculpate the movant. (Byrd v. Wainwright, 428 F. 2d 1017, 1020 [5th Gir.].) Moreover, the court is not required to sever where the possibility of the codefendant’s testifying is merely colorable or speculative. (Byrd v. Wainwright, supra, at p. 1022; United States v. Kahn, supra, at p. 841.) Finally, the motion must be timely. (People v. Owens, supra, at p. 98.)
Applying these guidelines to the instant case, it cannot be said that the court abused its discretion in denying the motion. Victory never offered proof as to what Bornholdt’s testimony would be, save for the conclusory statement quoted above. Nor did he show how the purported statement would aid his defense to the felony murder charge.[7] Nor for that matter did he show that Bornholdt would in fact testify. Finally, the motion was *88 untimely in that it was not made until the eve of trial although the facts on which it was based were known to defense counsel months earlier.
Defendant next contends that the court unduly restricted his cross-examination of a key witness respecting the use of prior statements made by the witness to the police and an Assistant District Attorney. Specifically, counsel sought to use the statements to impeach Francisco Garcia’s trial testimony that the defendant, Victory, kneed Patrolman Varecha in the groin. In the two prior statements, Garcia omitted any reference to having seen Victory knee the officer.[8] The court refused counsel’s request to introduce the full statements into evidence and sustained objections to certain questions designed to show that the statements contained no reference to the alleged kneeing.
It is well established that a witness’ prior inconsistent statements may be used to impeach his trial testimony (e.g., People v. Friedman, 205 N. Y. 161,167-168, supra). And the test of inconsistency, we have said, is not limited to outright contradictions between a witness ’ prior statements and his trial testimony; it includes, as well, omitting to mention critical facts at the prior time, which facts are later related at trial. (People v. Rosario, 9 N Y 2d 286, 289-290, quoting Jencks v. United States, 353 U. S. 657, 667.) The weight of authority holds, however, that a witness may not be impeached simply by showing that he omitted to state a fact, or to state it more fully at a prior time. It need also be shown that at the prior time the witness’ attention was called to the matter and that he was specifically asked about the facts embraced in the question propounded at trial. (E.g., Brooks v. E. J. Willig Truck Transp. Co., 40 Cal. 2d 669, 675-677; People v. Scott, 218 Cal. App. 2d 249, 25A-255; State v. Romprey, 339 S. W. 2d 746, 751-752 [Mo. Sup. Ct]; Tanksley v. United States, 145 F. 2d 58, 60 [9th Cir.]; Louisville & N. R. Co. v. Mitchell’s Administratrix, 276 Ky. 671, 675-676; Lamb v. Woodry, 154 Ore. 30, 38-39; Ball v. State, 43 Ariz. *89 556, 559; cf. Steen v. Burleson, 268 App. Div. 815; see, also, 3A Wigmore, Evidence, § 1042 [Chabourn rev., 1970]; 1 Underhill, Criminal Evidence [5th ed., 1956], § 240.) The rule, we would say, accords with human experience recognizing that unless asked directly about a matter a person may quite normally omit it from a narrative description.
Applying this principle to the case before us, defendant failed to show that at the prior time Garcia’s attention was specifically called to the manner in which Victory allegedly inflicted the blows upon Officer Varecha. Failing this, his trial testimony could not be impeached by showing he omitted to mention the kneeing incident in the prior recorded statements.
We have considered defendant’s other arguments for reversal and find them to be without substance.
People v. Bornholdt
Defendant Bornholdt contends that a tranquilizing drug administered to him at Bellevue Hospital while awaiting trial rendered him incompetent to participate meaningfully in the jury selection proceedings, denying him due process of law. The record indicates, however, that although the defendant may have experienced uncomfortable moments, he was mentally aware of the proceedings, and was able to participate and converse with his attorney every day that the jury was being selected. Moreover, on no occasion did counsel request a continuance or adjournment on those days when he claimed his client was uncomfortable or unresponsive.
We have also considered the contention that the People failed to prove beyond reasonable doubt his sanity at the time of the crime. But although the psychiatric experts of the defense and prosecution gave contradictory views as to whether Bornholdt was suffering from paranoid schizophrenia at the time of the shooting’, there was more than sufficient evidence from which a jury was privileged to conclude that defendant knew and appreciated the consequences of his conduct, and that such conduct was wrong.
The other points raised by the defendant have also been considered and found to be without merit.
*90 In each case, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Burke, Breitel, Gabrielli, Jones and Wachtler concur.
Orders affirmed.

. Bornholdt also appeals as much of the order of the Appellate Division as affirmed the denial, without a hearing, of his motion for a new trial on the ground of newly discovered evidence.

. Victory’s driver’s license had been revoked three years earlier.

. “ § 120.05 Assault in. the second degree.— [as amd. by L. 1968, ch. 37] A person is guilty of assault in the second degree when: *' * 3. With intent to prevent a peace officer or a fireman from performing a lawful duty, he causes physical injury to such peace officer or fireman ”.

. “ § 177. In what eases allowed. A peace officer may, without a warrant, arrest a person, 1. For an offense, committed or attempted in his presence ”.

. “ § 205.10 Escape in the second degree.— A person is guilty of escape in the second degree when: 1. He escapes from a detention facility; or 2. Having been arrested for, charged with or convicted of a felony, he escapes from custody. Escape in the second degree is a class E felony.”

. “ § 125.25 Murder.— A person, is guilty of murder when: « 3. Acting either alone or with one or more other persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, sodomy in the first degree, sexual abuse in the first degree, escape in the first degree, or escape in the second degree, and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, causes the death of a person other than one of the participants ”.

. We note that the People did not have to connect "Victory with the shooting, other than to prove that it occurred in the course of and in furtherance of the felony of escape in the second degree.

. The significance of this testimony is that Victory could not be found guilty of felony murder unless he had been arrested for a felony and then escaped or attempted to escape during the course of which the killing occurred. The Imp pinoincident (assault, second degree, Penal Law, § 120.05, subd. 3) was the predicate for the felony arrest and all that followed.