Albert VICTORY, Petitioner-Appellee,

v.

Roy BOMBARD, as Superintendent of Greenhaven Correctional Facility, Respondent-Appellant.

No. 260, Docket 77-2075.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 1977.

Decided Jan. 16, 1978.

Henry J. Steinglass, Asst. Dist. Atty., New York City (Robert M. Morgenthau, Dist. Atty. for New York County, Peter L. Zimroth and Mark Dwyer, Asst. Dist. Attys., New York City, of counsel), for respondent-appellant.

Henry Winestine, New York City (William E. Hellerstein, New York City, of counsel), for petitioner-appellee.

Before SMITH, MANSFIELD and OAKES, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the South-

ern District of New York, Robert J. Ward, *Judge,* granting a writ of habeas corpus to a state prisoner on the ground of constitutional error in his conviction for felony murder.

In 1970 Albert Victory was convicted and sentenced for felony murder in the Supreme Court of the State of New York for New York County. Judgment was affirmed without opinion in the Appellate Division, First Department (38 A.D.2d 689, 327 N.Y.S.2d 544 (1971)) and by the New York Court of Appeals, *sub nom. People v. Bornholdt,* 33 N.Y.2d 75, 350 N.Y.S.2d 369, 305 N.E.2d 461 (1973), *cert. denied,* 416 U.S. 905, 94 S.Ct. 1609, 40 L.Ed.2d 109 (1974). A motion for reargument was denied by the New York Court of Appeals on June 15, 1976. Victory applied for a writ of habeas corpus in the United States District Court for the Southern District of New York alleging constitutional deficiencies in the state trial court's ruling on evidence, charge on the elements of the crime and instructions on an affirmative defense. The district court, Robert J. Ward, *Judge,* granted habeas relief on the claimed deficiency in the charge (432 F.Supp. 1240 (1977)). The State of New York appealed and we assumed jurisdiction under 28 U.S.C. § 2253. We find no error in any of the state court's rulings. Accordingly, we reverse and remand with instructions to deny habeas relief, discharge the writ and dismiss the action.

Evidence at trial, which the jury was entitled to credit, established that on the night of October 6–7, 1968, Victory, driving a car with Robert Bornholdt as passenger, sped through a red light at Fifth Avenue and 54th Street in Manhattan. He was pursued by John Varecha, a New York City police officer, to his destination, Arthur's Discotheque. There Varecha sought to question Victory and Bornholdt. The two suspects assaulted the patrolman. Varecha struck back with his nightstick, drew his gun and told them they were under arrest.

Victory and Bornholdt then slowly backed away and drew Varecha into a nearby alley. There Bornholdt drew a gun and fatally wounded Varecha.

Victory was tried for felony murder (N.Y. Penal L. § 125.25(3) (McKinney 1967)) predicated upon the crime of escape in the second degree (*id.* § 205.10(2)). To convict Victory the jury had to find that Bornholdt and he escaped from custody after Officer Varecha had arrested them for a felony and that the policeman was shot in the course of or in furtherance of this escape. In order to establish that the escape had followed an arrest *for a felony,* the State attempted to show that Victory had committed an assault in the second degree (*id.* § 120.05(3)) during the scuffle in front of Arthur's by kicking Varecha in the groin, thereby impairing his physical condition or causing him substantial pain (*id.* § 10.00(9)).

In his application for habeas relief Victory asserted three constitutional claims: (1) denial of due process because the trial judge failed clearly to instruct the jury that they had to find an escape had occurred before the shooting to convict; (2) denial of the sixth amendment right of confrontation because the trial judge refused to allow into evidence certain documents which could have impeached the testimony of the prosecution's main witness; and (3) denial of due process because the trial judge instructed the jury that Victory had the burden of establishing the proof of an affirmative defense to the charge of felony murder.

██ Victory argues that the charge to the jury and an instruction which the judge gave in response to a question from the jury were so unclear as to permit the jury to convict Victory on the false assumption that he could be guilty of felony murder if he attempted to escape only after the shooting. A review of the record reveals no support for this contention.

In charging the jury[1] the trial judge explained several times that it was neces-

---

1. The charge to the jury was preceded by many statements to the jury which informed them that they could find Victory guilty of felony murder only if the escape or attempt to escape occurred before the shooting. The jury was read the indictment which specified that Victo-

sary for them to find that an escape was being committed at the time Varecha was shot in order to convict Victory of felony murder. For example, "the prosecution must show that during the commission or attempted commission of the crime of escape in the second degree, and in the course of and in furtherance of that crime, or the immediate flight therefrom, a defendant caused the death of a person other than one of the participants."

Both the crime of felony murder and the crime of escape in the second degree were submitted. After retiring, the jury asked for a re-reading of the law of escape, and twice for a re-reading of testimony about events prior to the shooting. Later on, the jury asked "As a matter of law, does the fact of flight after the shooting itself establish escape in the second degree after an arrest has been made for felony assault?" The trial judge gave a response to which Victory's counsel excepted, claiming that the response "has definitely left an impression with that jury that the flight after the homicidal act would be sufficient for purposes of making out a felony murder." [2]

---

ry was charged with felony murder in that "while engaged in the commission of the crime of escape in the second degree and in the course of such crime and in the furtherance thereof and in immediate flight therefrom, the defendants caused the death of Patrolman Varecha." Victory's counsel explained the indictment to prospective jurors several times. For example, he stated that to convict "[you] must, in your own mind, after hearing all the evidence, find beyond a reasonable doubt that my client was in the act of escaping at the time that the police officer was killed." The indictment was read to the jury again in the prosecutor's opening statement. In summation, both Victory's counsel and the prosecution told the jury that Victory must be guilty of escape in the second degree to be found guilty of felony murder. For example, Victory's counsel declared "what we are interested in . . . is whether or not Albert Victory was in the act of escaping when the police officer was shot."

2. The record states:

> The Court: Ladies and gentlemen of the jury, I have your Communication No. 8. . .
>
> .    .    .    .    .
>
> Now, ladies and gentlemen, that question does not in law permit of a categorical yes or no answer in the form in which it is posed to me. In the form in which this is phrased, I cannot give you a legal answer categorically yes or no, but I will try and make it all very clear to you and see whether or not this does not answer the question from a legal standpoint for you.
>
> Now, first, I want to make it perfectly clear that in order that you find that the crime of escape in the second degree occurred, you must be convinced beyond a reasonable doubt that a defendant was arrested for a felony, as, for example, assault in the second degree; and that the defendant, such defendant, a defendant refused to submit to the authority of the arresting officer or challenged or resisted the arrest; and that a defendant escaped from custody.

> You must find that, in order to find that the crime of escape in the second degree occurred, you must be convinced beyond a reasonable doubt that (1) a defendant was arrested for a felony, as, for example, assault in the second degree; (2) that a defendant refused to submit to the authority of the arresting officer or challenged or resisted the arrest; and (3) that a defendant escaped from custody.
>
> Now, there is no doubt that—I told you that—the arresting officer here is a policeman, that is, a peace officer; he comes within that definition; and I told you what the law meant by "custody"; I explained that very clearly.
>
> Now, flight after a shooting in and of itself does not necessarily constitute escape in the second degree. However, flight after a lawful arrest by a policeman for the felony of assault in the second degree does constitute the crime of escape in the second degree, whether that flight takes place before or after the shooting.
>
> Is that clear?
>
> Now, in other words, you have got to find things in this order: You must find them beyond a reasonable doubt. (1) That there was the felony of assault in the second degree; (2) that as a result of that assault in the second degree, there was a lawful arrest; and (3) that following that lawful arrest there was flight from the custody of that arrest.
>
> Now, lastly, I am going to read once again subdivision 3 of section 125.25 of our Revised Penal Law, which says: "That a person is guilty of murder when, acting either alone or with one or more other persons, he commits or attempts to commit escape in the second degree and, in the course of and in furtherance of such crime, or of immediate flight therefrom, he or another participant, if there be any, causes the death of a person other than one of the participants.
>
> Now, I address myself to the entire jury. Does that answer the question as far as the law is concerned? Is anybody in doubt or is everybody satisfied?

The judge indicated that there was no "categorical" answer to the question posed, carefully stated what the jury would be required to find for a conviction of escape in the second degree, then re-read the statutory definition of felony murder which, as the jury had often heard, requires death be caused in the course of or in furtherance of a predicate crime. The trial judge then re-read the indictment and concluded with further instructions on the crime of escape in the second degree. Although the response might have been more lucid, the trial judge's instruction could not have led the jury to convict for felony murder on the assumption that they could do so if they found that escape occurred only after the shooting.[3] Consequently, we conclude that the district court was in error in finding constitutional error in the charge.

Victory claims that he was denied the sixth amendment right of confrontation because the trial judge refused to allow the introduction of certain documents into evidence.

> The Foreman: It does.
> The Court: Everybody satisfied? All right, thank you.
> I am told by my secretary to call to your attention that the indictment charges both these defendants, Bornholdt and Victory, with the crime of murder, in that the death of Patrolman John Varecha was caused while each was engaged in the commission of the crime of escape in the second degree.
> Now, there can't be any escape in the second degree unless you are convinced beyond a reasonable doubt that there was an assault in the second degree. That's the underlying felony from which this felony, escape in the second degree, flowed, if it did flow, and you must be convinced of that beyond a reasonable doubt.
> Is that clear?
> The Foreman: Yes, Your Honor.
> The Court: Any other question on that?
> The Foreman: No.
> [Trial Transcript, 3176–79].

**3.** The Supreme Court has made it clear that errors in instructions to the jury rarely rise to a constitutional level.
> In *Henderson v. Kibbe,* 431 U.S. 145, 97 S.Ct. 1730, 1736–7, 52 L.Ed.2d 208 (1977) the Court recently commented:
>> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is

At trial, Francisco Garcia, the State's main witness, testified that Victory grabbed Varecha by his jacket and kicked him in the groin "very hard . . . lifting the policeman up." Victory's counsel attempted to introduce into evidence notes written by Detective Byrne of statements made by Garcia at the stationhouse shortly after the shooting and a stenographic transcript of an interview with Garcia by Assistant District Attorney Dannett about two hours after Garcia spoke to Byrne. Byrne's notes state: "I [Garcia] jumped on tan guy's [Bornholdt's] back and the tan one struck him & kicked him in the groin." The transcript contains no mention of a kick to Varecha's groin. Victory's counsel claimed that because neither the handwritten notes nor the transcript mentioned that Victory kicked Varecha in the groin, these documents were evidence of "prior inconsistent statements" and attempted to introduce them into evidence as such. The trial judge refused to admit these documents into evidence.[4] Prior inconsistent state-

> even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughton,* 414 U.S. 141, 147, 94 S.Ct. [396] 397, 400, 38 L.Ed.2d 368, not merely whether " . . . the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.,* at 146, 94 S.Ct., at 400.
> and further observed:
>> The strong interest in preserving the finality of judgments . . . as well as the interest in orderly trial procedure, must be overcome before collateral relief can be justified. For a collateral attack may be made many years after the conviction when it may be impossible, as a practical matter, to conduct a retrial. [*Id.,* 1737, n. 13].

**4.** Victory's counsel first offered Byrne's handwritten notes into evidence when cross-examining Garcia. Victory's counsel stated he was "not using it [*sic*] for purposes of impeaching him." The trial judge then ruled that Byrne's notes *would not be accepted.* Shortly after this, Victory's counsel began to read from the transcript of the interview held by Dannett as if he were asking Garcia a question. An objection was made because Victory's counsel was reading from material not in evidence. Victory's counsel stated he wanted to point out that

ments may be used to impeach the credibility of a witness, but to admit specific statements the trial judge must be persuaded that they are indeed inconsistent. *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1974).

■ The omissions and variously recorded statements were not necessarily inconsistent with any aspect of Garcia's testimony. "In most circumstances silence is so ambiguous that it is of little probative force." *United States v. Hale, supra,* 422 U.S. at 176, 95 S.Ct. at 2136. In any case, the failure to admit the notes and transcript into evidence was harmless in light of the support given to Francisco Garcia's trial testimony by other witnesses who testified at trial and by notes taken by Attorney Dannett. Donna Garcia, Francisco's wife, stated that Victory "brought his knee up, and just kicked the policeman in the groin." Theresa Gentry declared that Victory from the front and Bornholdt from the rear were "kicking and punching" Varecha and that "[t]he next thing I noticed [was] that the policeman was all hunched over, doubled over with one hand right across his stomach." Maureen LaGuardia told the jury that Varecha "was like bent over a little" and "his face was contorted in pain." In addition, Dannett's notes, taken before his interview with Garcia, read "pt1 kicked & holding himself in groin."[5] We agree with the judge below that any error which may have resulted from the exclusion of Byrne's notes and the transcript was not prejudicial.

■ Victory contends that he was denied due process because he was required to bear the burden of establishing the proof of an affirmative defense to felony murder. The district court did not pass upon this claim. Following the recent Supreme Court decision in *Patterson v. State of New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), this court upheld the constitutionality of a New York statute placing on a defendant the burden of proving as an affirmative defense that the weapon used to commit a robbery was unloaded or inoperative. *Farrell v. Czarnetsky,* 566 F.2d 381 (2d Cir. 1977). We find no significant difference between the statute upheld in *Farrell* and the statute challenged in this action.[6] Consequently, we find no merit in Victory's claim that he was denied due process because he was required to bear the burden of proof of an affirmative defense to felony murder.

Reversed and remanded with instructions to discharge the writ and dismiss the action.

the transcript did not mention the kick. The trial judge ruled that lack of mention of the kick in the transcript was not inconsistent with Garcia's trial testimony and that the transcript was not admissible for impeachment purposes. Later, Victory's counsel called the stenographer who transcribed the interview to the stand and offered the transcript into evidence. This offer was also rejected.

5. On appeal Victory's counsel argues that Dannett's notes were made "while interviewing Garcia immediately prior to his grand jury appearance several weeks after the incident." Appellee's Brief at 37. We reject this suggestion. Garcia testified he had a conversation with Dannett at which Dannett was writing "sometime during the course of the evening [of October 7, 1968]." Dannett told the trial judge that his notes were "taken in the police station that night [October 7, 1968]." The notes are dated "10/67." There is no evidence that they were written after October 7, 1968.

6. New York Penal Law § 125.25 provides:
[I]n any prosecution under this subdivision, in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:
(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.
Under New York Penal Law § 25.00(2), "[w]hen a defense declared by statute to be an 'affirmative defense' is raised at a trial, the defendant has the burden of establishing such defense by a preponderance of the evidence."