OPINION OF THE COURT
Eve Preminger, J.
A defendant who faces multiple indictments or who is charged with one or more codefendants often encounters delay in proceeding to trial. When indictments face the defendant in different jurisdictions the problems are compounded. The instant case explores some ramifications of the interplay between the speedy trial statute, the Uniform Criminal Extradition Act (CPL art 570), and the Interstate Agreement on Detainers (CPL art 580) in the context of indictments charging two individuals with narcotic sales.[1]
On November 28, 1978, defendant sold 46 grams of heroin to an undercover police officer for $120; and on December 6, 1978, acting with James Manieri, he sold some heroin to the same officer for $180. Eight days later defendant was charged in two separate indictments. The first, 4940/78, dealing with the events of December 6, charged him with criminal sale of a controlled substance in the second degree; Manieri was named as a codefendant on this indictment. The second, 4941/78, charged him alone with the November 28th possession and sale of heroin. By December 20th, three weeks after the initial sale, defendant was arraigned on the indictments.
The speed with which defendant’s case had so far proceeded was, unfortunately, little indication of the tempo of the succeeding events.
The next three month’s activity consisted of a few desultory and unremarkable adjournments which, the parties agree, are chargeable to the People.[2]
*53 The beginning of the first period in contention began on March 21, when Manieri posted bail. The following day court and counsel were informed by the court clerk that Manieri "had been taken out of Rikers Island and returned to the State of New Jersey under an extradition warrant and he waived [extradition]”. Manieri was to remain in New Jersey for almost eight months, until November 15, 1979. During this period little progress was made in bringing defendant to trial on either of his two indictments. On April 11th defendant’s attorney informed the court that he had been told by the People that they would oppose severing his client’s case from that of his codefendant. The People confirmed their position on May 17th, stating that if the defendant wanted to resolve indictment 4940/78 in the absence of codefendant he could do so by entering a plea of guilty, and in no other manner. As to indictment 4941/78, nothing was said.
Defendant’s cases remained in a state of suspended animation through the summer and fall. Progress seemed to be in the offing when Manieri was returned to this jurisdiction on November 15, but this hope proved illusory.
In defiance of the laws of probability, on that very day defendant waived extradition to New Jersey to face charges on an unrelated crime.
On December 11 the State of New York filed a detainer for defendant’s return with the State of New Jersey, in anticipation of the time when defendant would demand resolution of his New York indictment (CPL 580.20 [art III (a)]). Having been sentenced on his New Jersey case on January 12, 1980, defendant made such a demand on March 10, by filing a pro se notice and request for final disposition as mandated by the statute.
The People received this request on March 12 and immediately submitted an order to the court to have the defendant returned. Administrative procedures delayed defendant’s return until May 16, a Friday, and defendant’s attorney was informed that his client was back in New York on the following Monday. This brings to a close the major period (Mar. 21, 1979-May 19, 1980) in contention on this motion.
It is the People’s view that this entire period is excludable under CPL 30.30 (4) (a) through (e).
*54 The People first contend that the entire period of Manieri’s absence (Mar. 21-Nov. 15) is excludable pursuant to CPL 30.30 (4) (d) which excuses reasonable delays caused by a codefendant’s unavailability.
Defendant responds that while in the ordinary case the period during which a codefendant is standing trial on another case might not be chargeable to the People under subdivision (4) (d), in the instant case the People "sent” the codefendant out of the State in disregard of defendant’s speedy trial rights. Having thus prejudiced defendant, they then compounded their malfeasance by failing to diligently secure Manieri’s return for almost five months.
Many of the same issues pertain to Santos’ absence. The defendant would impose upon the People a duty to oppose extradition to New Jersey in an attempt to keep the defendant in this jurisdiction so as to assure him a speedy trial. Neglecting this duty, i.e., passively permitting extradition through inaction, is viewed under this theory as the functional equivalent of sending him away. Delays in obtaining defendant’s speedy return are characterized by defendant as failing to exercise due diligence.
The People see defendant’s absence differently. If defendant was in New Jersey, it was of his own volition; they were under no duty to keep him here nor could they have done so had it been their desire. They claim that defendant exercised his option of resolving his New Jersey charges before those facing him in New York and thus consented to the delay (CPL 30.30 [4] [b]) or that the period (Nov. 15, 1979-May 16, 1980) was one in which "other proceedings concerning the defendant” (CPL 30.30 [4] [a]) were taking place, or a "period of delay resulting from absence or unavailability” of the defendant (CPL 30.30 [4] [c]).
Analysis of defendant’s argument that the People procured the absence of Manieri and Santos to New Jersey begins with an examination of CPL article 570 which, unlike CPL article 580 is applicable when extradition is sought against individuals who are not incarcerated as sentenced prisoners (Matter of Cresong v Nevil, 51 AD2d 1096). Both Santos and Manieri were facing charges in New York when demanded by New Jersey. CPL 570.44 provides that: "If a criminal prosecution has been instituted against such person under the laws of this state and is still pending, the governor, in his discretion, may either surrender him on demand of the executive authority of *55 another state or hold him until he has been tried and discharged or convicted and punished in this state.”
This section, however, does not apply to situations in which the defendant waives extradition.[3] An individual waiving extradition pursuant to CPL 570.50 "waive[s] the issuance and service of the warrant * * * and all other procedure incidental to extradition proceedings”. While it is true that the section further provides that "nothing in this section shall be deemed * * * to limit the powers, rights or duties of the officers * * * of this state”. I do not take this sentence to mean that the Governor or his agents may prevent, under the aegis of the article, a defendant who wishes to waive extradition from doing so. The first portion of CPL 570.50 can only be read to mean that by waiving extradition, an individual bypasses the procedures and protections which are otherwise afforded him. This reading is consonant with the fact that the Governor may exercise his discretion to hold a defendant only after he has issued a warrant (People ex rel. Linaris v Weizenecker, 89 Misc 2d 814). Thus, the person who waives issuance and service of the warrant also draws reign to any possible article 570 intercession from the Governor. (For an examination of defendant’s rights, in the inverse situation, see, People ex rel. Seiler v Warden, 199 Misc 570.)
For the reason that article 570 fails to give the State the power to hinder a defendant who wishes to waive extradition from doing so, the State cannot be said to have effected the transfer of Manieri or Santos, who were in New Jersey entirely of their own volition. I am in agreement with the People’s position that a defendant who waives extradition expresses a preference to resolve the charges he faces in the extraditing jurisdiction first and thus consents to the adjournment which is reasonably necessary to effectuate his choice. For an incarcerated defendant, this means that for the purposes of CPL 30.30 the delay engendered in defendant’s New York case because of proceedings (up to sentence) in a foreign jurisdiction is not chargeable to the People, and may be viewed as an excludable period under CPL 30.30 (4) (a) or (4) (b). The period November 15, 1979, when defendant waived extradition, to January 4, 1980, when he was sentenced is, for this reason, not chargeable to the People.
*56 This rationale is not dispositive of the period in which Manieri’s New Jersey case was proceeding; Manieri may have consented to the delay in his own case by this action, but he could hardly have bound a codefendant who was never a party to his (Manieri’s) election.
This result has its greatest impact on indictment 4941/78.
As defendant never consented to staying the progress of his case until November 15, and there was no excuse for the failure of the People to attend to defendant’s indictment, the indictment must be dismissed.
I find that, contrary to the People’s position, plea negotiations played no part in the long delay in bringing defendant to trial (see, People v Panarella, 50 AD2d 304; People v Rivera, 72 AD2d 922). With minor exception noted below, the sole cause of the delay to November 15 was the refusal of the People to proceed with either of defendant’s cases until Manieri’s return, a position which is explained but not justified by the People’s desire to try the cases in an order they deemed preferable (People v Johnson, 38 NY2d 271, 277; People v Mason, 125 AD2d 595).
That it was, at best, a tactical advantage that was being sought by the People by this maneuver is demonstrated by the fact that CPL 200.40 (2), as then existed stated that, in the case of two or more defendants charged in separate indictments: "If such indictments, in addition to charging the same offense or offenses against the different defendants, charge other offenses not common to all, the indictments may nevertheless be consolidated for the limited purpose of jointly trying such defendants for an offense or offenses common to all. In such case, such indictments remain in existence with respect to any offenses charged therein which are not the subject of the consolidation, and may be prosecuted accordingly.”
This meant that there was no possibility of complete consolidation. The People were faced with the choice of trying the cases as they were then structured-^-trying Santos and Manieri jointly on indictment 4940/78 and Santos alone on indictment 4941/78 — or of moving for consolidation and trying Santos on the consolidated indictment, and trying Manieri on the remaining charges of indictment 4940/78.
The conclusion that the People’s position lacks all logical underpinning is inescapable; no matter how they wished to proceed, they would inevitably have had to give Santos a *57 separate trial, and there was no good reason not to give it to him while Manieri was unavailable. This is not to say that the People were obligated to consolidate for Santos’ benefit; there may have been good (e.g., evidentiary) reasons why they would not wish to do so, but if they chose not to, there was no reason not to first try Santos on indictment 4941/78.
Some periods between March 20 and November 15 are arguably excludable: April 3 to 11 (defense counsel not present); May 17 to July 10 (motions and decision); and to a lesser degree, July 10 to September 13 (which the calendar Judge intended to be an excludable adjournment, but regarding which the People failed to adduce any evidence, People v Berkowitz, 50 NY2d 333; People v Kendzia, 64 NY2d 331; People v Meieriercks, 68 NY2d 613). Clearly includable, however, are the periods March 20 to April 3 (14 days); April 11 to May 17 (36 days); September 14 to October 5 (22 days); October 5 to November 9 (36 days; see, People v Sturgis, 38 NY2d 625); November 9 to November 15 (6 days); the sum of these adjournments alone totals 113 days, and when added to the 91 includable days not in dispute carries the time chargeable to the People well over the six months permitted them.
In contradiction, none of the period March 20 to June 20, 1979 (when Manieri was sentenced) is chargeable to the People in regard to indictment 4940/78 (the indictment in which codefendants are charged).
Just as was the case with Santos, Manieri and not the People was responsible for his absence from this jurisdiction from the date of waiver of extradition until sentence date. Santos, his codefendant, had, therefore, no choice but to suifer it in the same manner as any ordinary adjournment sought by a codefendant with whom he had been joined for trial (CPL 30.30 [4] [d]). No duty was imposed on the People to keep Manieri here for the benefit of Santos, nor could this have been the case in light of their inability to oppose his waiver. Moreover, since Manieri was on trial during this period the time for trial as to him did not run, nor was there, during this limited period, at least, good cause for granting defendant a severance (People v Bornholdt, 33 NY2d 75, cert denied sub nom. Victory v New York, 416 US 905; People v Coelho, 124 AD2d 1007). The delay of four months was, moreover, reasonable in this context and is excludable.
The question remains concerning this indictment whether the People are to be charged with any period between which *58 defendant and Manieri were sentenced on their respective New Jersey cases and returned to New York (June 20-Nov. 15, 1979 and Jan. 4, 1980-May 16, 1980).
After Manieri and Santos were sentenced the Interstate Agreement on Detainers (CPL 580.20 et seq.) became applicable to them (CPL 580.20 [art III (a)]). That statute imposes upon the People the duty to bring a defendant to trial within 180 days of receipt of defendant’s request for final disposition of pending charges, and within 120 days of defendant’s return to New York. These time constraints were met in each case, and the People contend that in meeting them they fulfilled their speedy trial obligations. Thus, for example, they claim that they should not be charged with the period January 12 (when defendant was sentenced) to March 10 (when defendant made his request to be returned) because they are not obligated to initiate the return until such a request is made (CPL 580.20 [art III (a)]).
I do not agree. I find authority in neither statute nor case law which holds that, by complying with CPL article 580, the People are relieved of their duty to bring a defendant to trial in conformity with CPL 30.30. Indeed, as noted earlier, the Uniform Extradition Act specifically states that the statute does not absolve the officers of the State of New York from their duties and the case cannot be any different in regard to the Agreement on Detainers. The answer to the People’s argument that as the Agreement on Detainers, is the sanctioned mode of effecting an incarcerated defendant’s return, there was no faster way of obtaining either Manieri or Santos, is the fact that, if the People were truly interested in speed, they could have used their initiative to obtain both Manieri and Santos with considerably more dispatch (CPL 570.12, and its cognate provision, NJ Stat Annot § 2A:160-33). Even under article 580 (CPL 580.20 [art IV]) more enterprise could have been shown.
That it was incumbent upon them to bring the defendant to trial without undue delay should have come as no surprise to the People; that burden always rests upon them (Barker v Wingo, 407 US 514). Moreover, no obligation is placed on defendant to remind them of their obligation (People v Staley, 41 NY2d 789, 793).
The period in which defendant is incarcerated after he has been sentenced may fairly fall under either CPL 30.30 (4) (c) or (4) (e). Both subsections impose a diligence standard upon *59 the People to obtain the presence of the defendant for trial. In the instant case, the People filed a detainer with the State of New Jersey in December, but they did nothing — and indeed may have forgotten defendant or been unaware of his whereabouts — until mid-March, when defendant revived them from their somnolence and demanded his return. This hiatus, even if merely reflecting willingness to wait upon events, was unnecessary (CPL 580.20 [art IV]), constituted disregard of defendant’s speedy trial rights (People v Jackson, 89 AD2d 697; People v Fuggazzato, 96 AD2d 538, mod 62 NY2d 862) and did not approach due diligence. As for the period following defendant’s request, the People failed to adduce sufficient evidence which speaks to their efforts, diligent or otherwise, in returning defendant. The same must be said concerning the five months which elapsed before Manieri was once more before a New York court, and of the minor delays which followed.
The People have the burden of establishing due diligence when the defendant demonstrates that he has not been afforded a speedy trial within the required statutory period (People v Berkowitz, supra; People v Roy, 102 AD2d 876; People v Brown, 114 AD2d 418). As the People have failed in their burden, I find that the periods June 20 to November 15, 1979 and January 4 to May 16, 1980 are chargeable to them.
The total period of delay chargeable to the People is thus in excess of six months on indictment 4940/78; accordingly, indictments 4940/78 and 4941/78 are dismissed.

. The procedural history of this case may be found at 68 NY2d 869.

. In contention on this motion are the following periods:
[[Image here]]

. For this reason I do not pass upon whether the District Attorney is an arm of the executive for the purposes of this section (but see, County Law § 700; CPL 570.04).