OPINION OF THE COURT
Gloria Goldstein, J.
This case presents an issue of first impression concerning the appropriate jury instructions to be given where the affirmative defense to felony murder, as contained in section 125.25 (3) of the Penal Law, is involved. Specifically, should the jury be charged that a defendant must prove that he lacked knowledge of a codefendant’s weapon possession in order to prevail on this affirmative defense.
*744 Defendants Luis Sanchez and Victor Vargas are charged with murder in the second degree and robbery in the first degree arising out of the robbery and shooting death of one Alexander Trabolsi. Mr. Trabolsi was accosted and shot to death as he exited from his car in a private parking garage located in the rear of 8506 Colonial Road in Brooklyn. On the night of the shooting, John Lynaugh, a civilian witness who lived at that address, observed two men whom he believed to be Hispanic park an automobile in front of his house, exit the car, and walk toward Colonial Road and 85th Street. Lynaugh went to the rear of his house and, looking out from his kitchen window, observed these two men on the sidewalk near the garage where Mr. Trabolsi parked his car. Lynaugh returned to his living room and, minutes later, observed the same two men running toward a car and driving off hurriedly.
Several days later, Elizabeth Santos contacted the 68th Precinct and reported that on the morning after the shooting she overheard her boyfriend, Luis Sanchez, and her sister’s boyfriend, Victor Vargas, discussing the robbery of an old man and having accidentally shot him. Ms. Santos informed the detectives that during the conversation, Sanchez and Vargas stated the man had been shot in the leg in a private parking garage and that Vargas was the shooter. Subsequently, Ms. Santos was shown photographs of both defendants and made positive identifications.
At the time of their arrest, defendant Vargas refused to make any statements, but defendant Sanchez gave a complete account. Sanchez claimed that Vargas entered the garage with Mr. Trabolsi, while he stood watch outside. According to Sanchez, he then heard a gunshot, ran into the garage, saw Vargas holding a gun, and the victim fall from a gunshot wound to the leg. Sanchez further claimed that Vargas, not he, then took the victim’s watch and wallet before they fled.
As a result of Sanchez’s statement, separate trials were required, and the court granted a defense application for severance (Cruz v New York, 481 US 186). Defendant Sanchez was the first to be tried. The thrust of his trial defense consisted of a disavowal of the homicidal act by Vargas, and, at the conclusion of trial, the defense requested that the jury be instructed on the affirmative defense provisions of the felony murder statute. Section 125.25 (3) of the Penal Law provides that, in a felony murder prosecution in which the defendant was not the only participant in the underlying crime, it is an affirmative defense that the defendant:
*745 "(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
"(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
"(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
"(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.”
Following the court’s charge which included instructions on the affirmative defense, the deliberating jurors sent a note asking, "Must defense prove under Point (c) that 'Louis’ had not known that a deadly weapon was present?”
Over defense objection, the prosecutor requested that this note be answered simply "Yes”. Ostensibly, it would seem that such a response is consistent with the intent of the statute, the argument being that, by virtue of subdivision (3) (c) of section 125.25, the Legislature specifically included lack of knowledge of the coperpetrator’s weapon possession as a prerequisite for the affirmative defense. Thus, under this rationale, the language of subdivision (3) (c) requiring defendant to prove he "[h]ad no reasonable ground to believe that any other participant was armed with a weapon” should be read to include a provision that he had no actual knowledge of a coperpetrator’s weapon possession.
Notwithstanding the superficial appeal of such an argument, this court declines to create such an addendum to the statute.
Reading an element of actual knowledge into subdivision (3) (c) would essentially create an unwarranted revision of the statute. This added requirement would compel defendant to prove that he did not "know or have reasonable ground to believe” that any other participant was armed. The court sees no basis upon which it may legitimately make a modification of this nature. The elements of the affirmative defense are set forth in no uncertain terms. Clearly, the phrase "know or reasonable ground to know” is not one unknown to our Legislature. This language, in fact, appears in several sections of the Penal Code. For example, under section 125.27 (a) (i), a *746 defendant is guilty of murder in the first degree when he kills an individual he "knew or reasonably should have known” to be a police officer. Under section 120.11, a defendant is guilty of aggravated assault when he commits assault upon a person "he knows or reasonably should know” is a police officer. Indeed, in countless sections of the Penal Law, the words "knew”, "know” or "knowledge” have been included to establish requirements of proof of actual knowledge. The court cannot assume that the omission of such language from the affirmative defense provision as contained in section 125.25 was merely an oversight.
In support of its position, the prosecution argues that establishing proof of "no reasonable ground to believe” is a more difficult task and greater burden than establishing proof of no actual knowledge, and thus the latter should be inclusive within the former. However, the premise of this argument is specious at best. Establishing the absence of "a reasonable basis” contemplates proof of objective factors and elements surrounding the crime. Absence of actual knowledge, while also susceptible of proof by circumstantial evidence concerning objective factors, has a decidedly subjective component. The difference between establishing lack of actual knowledge and lack of any reasonable ground of belief is essentially a difference in manner of proof and types of evidence. It remains open to question whether it can be said that one or the other is, in the final analysis, more difficult to prove.
One observation readily apparent is that lack of knowledge would, in the majority of cases, be most expeditiously proven through testimony of a defendant. In the context of an affirmative defense where the burden of proof lies with the defendant, creating a situation compelling such testimony has raised Fifth Amendment concerns (see, People v Bornholdt, 33 NY2d 75), and indeed, such considerations may have been behind the Legislature’s choice of language. Of course, in the absence of legislative history so indicating, any conclusion in this regard may properly be considered speculative.
It is precisely such speculation which the court seeks to avoid by leaving the statute intact. In all statutory interpretations, and particularly in the sensitive area of jury instructions, a statute which contains plain and unadorned language should not be modified on a conjectural basis only (People v Cruz, 48 NY2d 419; People v Bayless, 89 Misc 2d 206).
The jury has asked for the defendant’s burden of proof *747 under subdivision (3) (c) of section 125.25, and the court is of the opinion that the statute as written must be read — no more and no less.
Accordingly, the court rejects the prosecution’s assertion that defendant must establish lack of knowledge of his codefendant’s weapon possession as an element of the affirmative defense of felony murder. The statute itself requires only proof that defendant had no reasonable ground to believe the codefendant possessed a weapon, and the jury will be instructed in that fashion.