■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK JEANTY, Also Known as BAKIM JOHNSON, BLACK and BERNARD, Appellant. [702 NYS2d 194] —Spain, J. Appeal from a judgment of the County Court of Schenectady County (Eidens, J.), rendered April 6, 1998, upon a verdict convicting defendant of the crimes of murder in the second degree, robbery in the first degree (three counts), burglary in the first degree (two counts) and assault in the first degree (two counts).

Following a jury trial, defendant was convicted of felony murder and related crimes based upon his role in the March 12, 1997 robbery and burglary of the home of Richard Vale in the City of Schenectady, Schenectady County, during which Sheryl (Denise) Toyloy, who was living with Vale, was killed. Pursuant to a cooperation agreement, one of the three participants in the crimes, James Young, provided detailed testimony at trial outlining defendant's role. Young's testimony established that defendant had visited Toyloy, with whom he had a drug-related relationship, earlier in the day at Vale's residence, leaving a specific window unlocked to permit later entry by an accomplice, Rashad Scott, who Toyloy did not know, for the purpose of their planned robbery of the residence after Vale returned from work. Pursuant to their plan, later that afternoon the trio returned in defendant's vehicle to Vale's residence, Scott entered the window to which defendant directed him while defendant and Young waited outside. Scott subdued Toyloy, bound her and covered her with a blanket. After Scott opened the front door, defendant and Young—carrying a .357-caliber magnum pistol—entered the house. Toyloy's wrists and ankles were then tied, the blanket was tied around her head

and shoulders and she was moved to a less visible location in the house. Approximately 45 minutes later, during which Toyloy remained motionless and silent, Young and defendant found that she had no pulse. It was later determined that she had died of asphyxiation.

Two hours later, immediately upon Vale's return home, defendant participated in a vicious beating of Vale, repeatedly striking him in the head with Young's gun, and Young thereafter handcuffed him. The robbers then extracted the combination of a basement safe from Vale and, after failing in their effort to open it, forced Vale to open it. They emptied the safe containing cash and coins valued at approximately $800, gagged and bound Vale and fled, dividing the proceeds. Defendant and Young fled to Kings County. Vale, bleeding profusely, managed to flee to a neighbor's home for help and was rushed by ambulance to the hospital for emergency medical treatment. Defendant and Young were arrested approximately two months later after Queens County narcotics detectives received information from an informant, who testified at trial that defendant had admitted in detail his participation in a robbery and murder occurring in the City of Schenectady. Defendant also subsequently admitted his participation in these crimes to a fellow inmate in jail, who also testified at trial.

Defendant was convicted of felony murder (count 1), three counts of robbery in the first degree (counts 2, 3 and 4)—based upon the serious physical injury to Toyloy (count 2) and Vale (count 3 [Penal Law § 160.15 (1)]) and the use of a dangerous instrument (count 4 [Penal Law § 160.15 (3)])—two counts of burglary in the first degree (counts 5 and 6) (see, Penal Law § 140.30 [2] [physical injury to non participant]; § 140.30 [3] [use of dangerous instrument]) and two counts of assault in the first degree (counts 7 and 9) (see, Penal Law § 120.10 [1], [4] [dangerous instrument and serious physical injury]).[1] Defendant was sentenced as a second violent felony offender to terms of imprisonment which, in the aggregate, totaled 75 years to life.

Defendant appeals raising a variety of appellate issues which, aside from certain technical corrections to defendant's sentence, are determined to be without merit. Defendant's primary contention is that the People failed to prove beyond a reasonable doubt that Toyloy—the victim of the murder—was not a participant in the crimes committed, a necessary element of felony murder (see, Penal Law § 125.25 [3]; see also, People v

---

1. Defendant was acquitted of count 8.

*Stokes*, 88 NY2d 618, 623). In moving to dismiss, defendant did not raise this alleged defect in the proof and, thus, this issue is not preserved for appellate review (*see*, CPL 470.05 [2]; *People v Gray*, 86 NY2d 10, 19). In any event, viewing the evidence in the light most favorable to the People and according them the benefit of all favorable inferences, we conclude that a rational trier of fact could most certainly have concluded beyond a reasonable doubt that Toyloy was not a participant in the underlying felonies (*see*, *People v Bleakley*, 69 NY2d 490, 495; *see also*, *People v Cabey*, 85 NY2d 417, 420; *People v Contes*, 60 NY2d 620, 621).

Defendant further contends that he established the affirmative defense to felony murder available to an accomplice of a participant who kills (*see*, Penal Law § 125.25 [3] [sometimes referred to as the "nonslayer" defense]) and that the jury's contrary finding was against the weight of the evidence.[2] County Court twice correctly instructed the jury on this affirmative defense which the jury rejected, convicting defendant of felony murder, a verdict fully supported by the trial testimony. Specifically, defendant failed to prove that he did not "in any way * * * cause or aid" in Toyloy's death (Penal Law § 125.25 [3] [a]). Young's testimony established, *inter alia*, that defendant planned the robbery, left the window unlocked, directed Scott to it and helped bind Toyloy and move her body. Similarly, since the very nature of this criminal plan contemplated and effected the violent and surprise attack on two people inside their home, defendant did not demonstrate that he "[h]ad no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury" (Penal Law § 125.25 [3] [d]). Further, defendant failed to prove that he had no reasonable ground to believe that any of the participants were armed with a deadly weapon (*see*, Penal Law § 125.25 [3] [c]). In view of the foregoing, we reject defendant's claims in this regard (*see*, *People v Bleakley*, *supra*, at 495).

Also without merit is defendant's contention that County Court erred in permitting the People—during the trial—to amend count 1 of the indictment charging felony murder to include burglary as an underlying felony in addition to robbery which was specified. The amendment did not alter the theory

---

2. Defendant did not testify or call witnesses, instead relying on the cross-examination of the People's witnesses to establish this defense. The burden, of course, was upon defendant to establish by a preponderance of the evidence all four prongs of this affirmative defense (*see*, Penal Law § 125.25 [3]; § 25.00 [2]; *People v Bornholdt*, 33 NY2d 75, 83, *cert denied* 416 US 905).

on which defendant was indicted as reflected in the evidence before the Grand Jury and, indeed, the Grand Jury was charged to consider both theories of felony murder having already considered the evidence on the robbery and burglary charges (*see*, CPL 200.70 [1]). Likewise, defendant has not demonstrated how the amendment prejudiced him in any manner (*see*, *People v Teribury*, 229 AD2d 829; *People v Diaz*, 175 AD2d 412, 413, *lv denied* 79 NY2d 826; *People v Murray*, 92 AD2d 617). Furthermore, the amendment did not add a new offense or entirely new count to the indictment and, in fact, count 1 already charged and correctly stated the offense of felony murder (*see*, CPL 200.70 [2] [a]; *cf.*, *People v Perez*, 83 NY2d 269; *People v Bingham*, 263 AD2d 611, *lv denied* 93 NY2d 1014; *People v Green*, 250 AD2d 143, *lv denied* 93 NY2d 873).

We next reject defendant's contention that the People failed to prove that Vale sustained serious physical injury, a necessary element of robbery in the first degree under count 3 (Penal Law § 160.15 [1]), and both counts of assault in the first degree, counts 7 and 9 (Penal Law § 120.10 [1], [4]). The testimony of the emergency room physician who treated Vale showed, *inter alia*, that Vale sustained seven deep head or facial lacerations which were 1 to 3 inches in length and penetrated either the skull membrane or bone, requiring two layers of 50 sutures and resulting in permanent scarring. If Vale's injuries had been left untreated he could have bled to death. Vale also sustained a fractured finger requiring surgical repair and months of physical therapy, a chipped tooth and bruises. Thus, viewed in the light most favorable to the People, the evidence supported the jury's determination on counts 3, 7 and 9 that Vale sustained serious physical injury (*see*, Penal Law § 10.00 [10]; *People v Quesnel*, 238 AD2d 725, 726-727, *lv denied* 90 NY2d 896; *People v Perez*, 184 AD2d 1033, 1034, *lv denied* 80 NY2d 932; *People v Navedo*, 47 AD2d 773, *cert denied* 422 US 1011).

Equally unavailing is defendant's contention that County Court erred in denying his motion without a hearing to suppress any testimony regarding the contents of an audiotape of a phone call between Toyloy and an unidentified male which was recorded at Vale's residence on the day of these crimes. The audiotape was created by an automatic taping system which Vale had set up on his telephone in his home, of which Toyloy was aware. In moving to suppress (*see*, CPL 710.20, 710.60), defendant failed to submit sworn allegations of fact that he was a participant in the subject phone conversation;

thus, he failed to demonstrate that he was an "aggrieved person" with a legitimate expectation of privacy and standing to challenge the admissibility of the audiotape (see, 18 USC § 2510 [11]; § 2518 [10]; *People v Wesley*, 73 NY2d 351, 357-359; *see also, Alderman v United States*, 394 US 165, 174; *United States v Cresta*, 592 F Supp 889, 898-899).[3]

Further, upon our review we discern no error in County Court's ruling permitting limited evidence of defendant's uncharged drug-related activities, as the evidence was not offered solely to raise an improper inference of defendant's propensity as a drug dealer to commit the crimes charged (see, *People v Ventimiglia*, 52 NY2d 350, 359; *People v Graves*, 194 AD2d 925, 926-927, *lv denied* 82 NY2d 719; *see also, People v Alvino*, 71 NY2d 233, 242). Rather, this evidence was relevant to matters material to the crimes charged such as defendant's identity, and was properly admitted as background evidence which was inextricably interwoven with the crimes charged and much of the testimony (see, *People v Vails*, 43 NY2d 364, 368; *People v Graves, supra*; *see also, People v Ortiz*, 238 AD2d 213, *lv denied* 90 NY2d 942).

Finally, while we agree with defendant's claim that County Court's imposition of consecutive sentencing on certain of the counts was improper, we nonetheless conclude that the overall aggregate sentence of 75 years to life was proper. At sentencing, County Court sentenced defendant on the felony murder count (count 1) to an indeterminate term of 25 years to life in prison, and to determinate 25-year terms on each of the remaining robbery, burglary and assault felony counts. Essentially, the court separated the counts into three groups of sentences which were to be served concurrently within the group and consecutively to the next group. The three groups consisted of (a) counts 1 and 2, (b) counts 3 and 4, and (c) counts 5, 6, 7 and 9. In the first group, counts 1 (felony murder) and 2 (robbery in the first degree, serious physical injury to Toyloy) were to run concurrent to one another. In the second group, counts 3 (robbery in the first degree, serious physical injury to Vale) and 4 (robbery in the first degree, dangerous instrument) were to run concurrent to one another, but consecutive to counts 1 and 2. The remaining counts, in the third group, were

---

**3.** Allegations of defendant's attorney that defendant had never consented to Vale's taping any of his phone conversations and that he anticipated that the People would endeavor to prove at trial that defendant was a party to the subject conversation did not satisfy defendant's burden in moving to suppress of submitting motion papers containing sworn allegations of fact establishing his aggrievement (see, CPL 710.60 [1]; *People v Wesley*, 73 NY2d 351, 357-359, *supra*).

all to run concurrently to one another: count 5 (burglary in the first degree, physical injury to Vale or Toyloy), count 6 (burglary in the first degree, dangerous instrument), count 7 (assault in the first degree, intentionally causing serious physical injury to Vale using dangerous instrument) and count 9 (assault in the first degree, serious physical injury to Vale during burglary), but consecutive to counts 3 and 4.[4] While we conclude that, in each of the three groups, some of the sentences should not have been made consecutive to some of the sentences in the next group, we do conclude that at least one sentence in each group was properly made consecutive to at least one sentence in the following group and, thus, the aggregate sentence is unaffected.

First, we disagree with defendant's claim that all sentences were required to be concurrent under Penal Law § 70.25. Under that statute, sentences imposed for two or more offenses may not run consecutively (1) where a single act constitutes two offenses, or (2) where a single act constitutes one offense and a material element of another offense (see, People v Laureano, 87 NY2d 640, 643). In this case, the trial jury was charged (and the amended indictment specified) that robbery and/or burglary could serve as the underlying felony for felony murder. However, the jury was never asked to specify which robbery or burglary constituted the underlying felony for their guilty verdict on count 1, and the jury did not so specify. Thus, we conclude that the conduct specified in any one of the burglary or robbery counts (counts 2 through 6) could have served as the underlying felony and, as such, could have been a material element of the felony murder conviction for which concurrent sentences were required (see, People v Riley-James, 168 AD2d 740, 743, lv denied 77 NY2d 966; People v Hildreth, 148 AD2d 879, 882-883, lv denied 73 NY2d 1016; see also, People v Ortiz, 250 AD2d 626, lv denied 92 NY2d 858; People v Meehan, 229 AD2d 715, 718, lv denied 89 NY2d 926).

Thus, County Court erred in making the sentences imposed on counts 3 and 4 consecutive to the sentence imposed for felony murder on count 1. However, we find no error in its determination that the sentencing on the robbery in the first degree (counts 3 and 4)—which related to the serious physical injury to Vale and the use of a dangerous instrument—should be served consecutive to the sentence imposed on count 2, involving serious physical injury to Toyloy (see, People v Laureano, supra).

---

4. Contrary to the People's interpretation of the sentencing minutes, counts 5, 6, 7 and 9 were not made consecutive to counts 1 and 2.

Additionally, we conclude that it was not permissible to direct that the sentences on counts 5, 7 and 9 be served consecutively to the sentence imposed on count 3 because all involved physical injury or serious physical injury to Vale by the same acts of defendant and his accomplices during the burglary, robbery and assault on Vale (*see, id.*). However, we find no error in County Court's direction that these sentences on counts 5, 7 and 9 be served consecutively to count 4, involving the first degree robbery using a dangerous instrument. Also, there was no error in making the sentence imposed on count 6 (burglary in the first degree using a dangerous instrument) consecutive to counts 3 and 4, as defendant's conduct in unlawfully entering this home with the intent to commit a crime therein and using or threatening to use a dangerous instrument (count 6) was factually and temporally distinct from his conduct nearly two hours later in forcibly stealing property from the safe using that dangerous instrument and causing physical injury to Vale (counts 3 and 4).

The net effect of our correction is that the aggregate sentence remains 75 years to life, as follows: count 1 is concurrent to counts 2 through 6; count 2 remains consecutive to counts 3 and 4; counts 3 and 4 remain concurrent to one another; counts 5, 7 and 9 must be concurrent to count 3 but remain consecutive to count 4; and count 6 remains consecutive to counts 3 and 4.

We have considered defendant's remaining contentions and find them to be either unpreserved for our review or without merit.

Cardona, P. J., Peters, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law and the facts, by directing that the sentence imposed on count 1 is to be served concurrently with the sentences on counts 3 and 4, and the sentences imposed on counts 5, 7 and 9 are to be served concurrently to the sentence imposed on count 3, and, as so modified, affirmed.