13-723-pr
Samuel v. LaValley

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of January, two thousand fourteen.

PRESENT:   REENA RAGGI,
                 DENNY CHIN,
                 CHRISTOPHER F. DRONEY,
                            *Circuit Judges*.

--------------------------------------------------------------------------------

DARRAN SAMUEL,

                            *Petitioner-Appellant*,

                   v.                                         No. 13-723-pr

THOMAS   LAVALLEY,   Superintendent,   Clinton Correctional Facility,

ERIC T. SCHNEIDERMAN, New York State Attorney General,

                            *Respondents-Appellees*.

--------------------------------------------------------------------------------

APPEARING FOR APPELLANT:        PAUL WIENER, The Legal Aid Society, Criminal Appeals Bureau, New York, New York.

APPEARING FOR APPELLEES:        MORGAN J. DENNEHY, Assistant District Attorney, Of Counsel (Leonard Joblove, Ann Bordley, *on the brief*), *for* Charles J. Hynes, District Attorney, Kings County, Brooklyn, New York.

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Brian M. Cogan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment that became final on July 12, 2013, is AFFIRMED.

Darran Samuel, who stands convicted in New York following a jury trial for murder in the second degree (felony murder), robbery in the first degree, and attempted robbery in the second degree, see N.Y. Penal Law §§ 125.25(3), 160.15(1) and 110.00/160.10(2)(a), appeals from the denial of his petition pursuant to 28 U.S.C. § 2254 for habeas corpus relief from conviction. Samuel contends that the district court erred in failing to conclude that the Appellate Division, Second Department, unreasonably applied federal law on direct appeal in rejecting his claim of ineffective assistance of trial counsel. The district court granted a certificate of appealability, see 28 U.S.C. § 2253(c)(3), upon determining that the "question of whether the Appellate Division's determination of lack of prejudice reasonably applied Strickland is one as to which petitioner has made a substantial showing of the possible denial of a constitutional right." Samuel v. LaValley, No. 12 Civ. 2372 (BMC), 2013 WL 550688, at *12 (E.D.N.Y. Feb. 12, 2013). We assume the parties' familiarity with the facts and record of the underlying proceedings, which we reference only as necessary to explain our decision to affirm.[1]

---

[1] The district court determined that Samuel just "barely" exhausted his ineffective assistance claim under the standard set forth in Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc), and noted that this court might consider at some point "whether Daye's definition of exhaustion should be revisited in light of the subsequent enactment of AEDPA." Samuel v. LaValley, No. 12 Civ. 2372(BMC), 2013 WL 550688, at *2 &

2

## 1.    Standard of Review

Although we review a district court's denial of a habeas petition de novo, see Vega v. Walsh, 669 F.3d 123, 126 (2d Cir. 2012), our review is cabined by double layers of deference when, as here, the state court rejects an ineffective assistance of counsel claim, see Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011); accord Burt v. Titlow, 134 S. Ct. 10, 13 (2013). First, we may grant habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); see Burt v. Titlow, 134 S. Ct. at 15. Pursuant to that standard, we "may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" Vega v. Walsh, 669 F.3d at 126 (quoting Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011)).

Where the claimed constitutional error on habeas review is ineffective assistance of counsel, a second level of deference applies to the strategic decisions of counsel, unless petitioner can show that (1) counsel's performance was objectively deficient, and (2) he suffered ensuing prejudice. See Strickland v. Washington, 466 U.S. 668, 688, 692–93 (1984). With respect to the first prong, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

n.1 (E.D.N.Y. Feb. 12, 2013). Because defendants do not argue exhaustion on appeal, there is no need to reconsider Daye here, something that, in any event, might well have to be pursued by the court en banc.

at 689; accord Raysor v. United States, 647 F.3d 491, 495 (2d Cir. 2011). With respect to the second prong, we will identify prejudice only if petitioner shows that, but for counsel's deficient performance, there is a "reasonable probability that . . . the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694; accord Santone v. Fischer, 689 F.3d 138, 154 (2d Cir. 2012). In this respect, it is not enough to show that counsel's errors had "some conceivable effect on the outcome of the proceeding." Strickland v. Washington, 466 U.S. at 693. Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; accord Gonzalez v. United States, 722 F.3d 118, 135 (2d Cir. 2013). In short, the inquiry is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. at 686; accord Cullen v. Pinholster, 131 S. Ct. at 1403.

2.      Ineffective Assistance of Counsel

We assume the parties' familiarity with the misconduct attributed to the prosecutor on cross-examination of Samuel and in summation, and we assume without deciding that it was objectively unreasonable for trial counsel not to object to the prosecutor's actions. Samuel argues that counsel's failure prejudiced his ability to present himself as a credible trial witness, which was critical to success on his "non-slayer" affirmative defense to the felony murder charge, see N.Y. Penal Law § 125.25(3). Pet'r's Br. 37. That defense required Samuel to show by a preponderance of the evidence that he had "no reasonable ground to believe" that any other participant in the felony robbery was armed with a

4

dangerous weapon and intended to engage in conduct likely to cause death or serious injury. See N.Y. Penal Law § 125.25(3);[2] id. § 25.00(2); People v. Bornholdt, 33 N.Y.2d 75, 83, 350 N.Y.S.2d 369, 375 (1973) (stating defendant bears burden of establishing non-slayer affirmative defense to felony murder by preponderance of evidence); accord People v. Jeanty, 268 A.D.2d 675, 677, 702 N.Y.S.2d 194, 198 (3d Dep't 2000). This prejudice argument is unavailing because the trial record, even without the alleged prosecutorial misconduct, seriously undermined both Samuel's credibility and his affirmative defense. In these circumstances, we cannot conclude that clearly established federal law precluded the Appellate Division from finding that Samuel had not satisfied Strickland's prejudice prong.

The trial evidence showed that on the evening of July 2, 2005, then-16-year-old Samuel and two other boys approached 15-year-old Christopher Rose and three of his friends—one of whom was only 11 years old—at the corner of Avenue D and 40th Street in Brooklyn. Samuel instigated the encounter that would lead to Rose's death by demanding an iPod from one of the boys and, when the boy refused, jumping on the 11-

---

[2] N.Y. Penal Law § 125.25(3), which establishes the crime of felony murder, provides that "it is an affirmative defense that the defendant:

(a) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and
(b) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and
(c) Had no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and
(d) Had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

year-old who was then holding the iPod. Further, Samuel then signaled for his older cousin Aaron Farrell, whom he knew to be a member of the Crips, a violent street gang, to join the fray. Farrell and approximately ten to fifteen of his friends began fighting with the four younger boys, whereupon someone yelled "poke him," and Rose was fatally stabbed. At trial, Samuel denied summoning Farrell and his friends, claiming instead that they joined the fight on their own volition. This testimony was contradicted by the three boys who survived the attack. Moreover, Samuel's testimony and his post-arrest statements to police were so rife with inconsistency (entirely independent of the prosecutor's alleged misconduct) as to undermine his own credibility and, consequently, the plausibility of his non-slayer defense.

First, the jury heard testimony that, after waiving his Miranda rights, Samuel gave four different statements to the police over the course of July 2 and 3, 2005, contradicting the version of events that Samuel gave at trial. During the first statement, which Samuel signed and which was read to the jury, and the second statement, which was videotaped and shown to the jury, Samuel mentioned an incident involving a fight over a bicycle but omitted any involvement in the robbery that led to Rose's death. A detective testified that in his third statement, Samuel admitted involvement in the robbery, but stated that a boy named "Bugs" approached the four boys and demanded the iPod, that his cousin Farrell joined the fight only after one of the boys punched Bugs, and that a boy named "Funko" stabbed Rose. Another detective testified that, in a fourth statement, Samuel stated that Funko and Farrell both stabbed Rose. At trial, Samuel testified that he did not know anyone named Funko or Bugs and accused police of fabricating the third and fourth

6

statements. Samuel acknowledged that he approached the boys and demanded the iPod and that Farrell stabbed Rose. While Samuel argues that he offered a viable explanation for his omissions, inconsistencies, and misstatements, i.e., that he was afraid of Farrell, the Second Department could reasonably have found that these discrepancies by themselves so seriously undermined Samuel's credibility that the prosecutor's allegedly improper attacks on his credibility did not undermine confidence in the trial outcome.

Second, Samuel gave such evasive and implausible testimony regarding his familiarity with Farrell, Farrell's friends, their gang membership, and their dangerousness as to preclude a reasonable jury from finding that he had no reason to know that they presented a threat of deadly force. That conclusion is only reinforced by the fact that, in the course of his evasive answers, Samuel admitted knowing that his cousin Farrell was a member of the Crips gang known by the name "Doom," that on the evening of July 2, Farrell and the "majority" of his friends were wearing blue t-shirts and blue doo-rags, Trial Tr. 702, Joint App. 406, symbolic of membership in the Crips, and that he knew that the Crips are dangerous. Indeed, Samuel eventually admitted knowing that Farrell got into fights and that on July 2, 2005, Farrell had challenged Samuel to "beat up" a random boy for no reason other than to prove he was not "soft." Trial Tr. 685, Joint App. 389.

Samuel further compromised his own credibility when he described how earlier in the evening of July 2, 2005, he had accompanied "Jamar," one of his accomplices in the charged robbery and murder, in order to "watch his back" while Jamar forcibly took a bicycle from a child. Notwithstanding Samuel's testimony that Jamar specifically called Samuel to request his assistance in this altercation, Samuel insisted that they were not

7

friends, only later to admit that they were. Thus, the inherent contradictions in Samuel's testimony and the implausibility of his attempted minimizations seriously undermined Samuel's credibility even without any prosecutorial misconduct.

Finally, contrary to Samuel's argument that the evidence of felony murder was "extraordinarily weak," Pet'r's Br. 64, both the district court and, more important, the Second Department, properly concluded that the trial evidence—including testimony from the three surviving victims, multiple eyewitnesses and one witness who testified that Samuel told him he had previously observed his cousin with a folding knife—convincingly established Samuel's guilt. In that context, and in light of the pervasive contradictions and implausibilities in Samuel's own testimony denying any reason to anticipate the use of deadly force, we are obliged to defer to the Appellate Division's reasonable determination that counsel's failure to object to prosecutorial misconduct did not undermine the outcome of the trial. See Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001) ("Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt.").

3.    Conclusion

For these reasons, as well as those identified by the district court in its thorough and well-reasoned opinion, see Samuel v. LaValley, 2013 WL 550688, at *10–12, we conclude that Samuel's habeas petition must be denied.[3]

---

[3] Samuel's contention that the district court erred in failing to evaluate the prejudice determination "in its totality," Pet'r's Br. 37, is belied by the court's thorough opinion. In any event, the Second Department expressly determined that "[c]onsidering the totality of the evidence, the law, and the circumstances of the case, trial counsel provided

We have considered Samuel's remaining arguments and conclude that they are without merit.  The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

---

meaningful representation." People v. Samuel, 88 A.D.3d 1020, 1021–22, 931 N.Y.S.2d 403, 405 (2d Dep't 2011).  We have ourselves considered the cumulative effect of counsel's alleged errors, see Gersten v. Senkowski, 426 F.3d 588, 611 (2d Cir. 2005), and conclude that the Second Department's Sixth Amendment prejudice ruling was not unreasonable.