*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 5, 2017                    107048
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                      MEMORANDUM AND ORDER

THOMAS RYDER,
                        Appellant.
_____

Calendar Date:  November 22, 2016

Before:  Garry, J.P., Egan Jr., Rose, Clark and Mulvey, JJ.

_____

        Carolyn B. George, Albany, for appellant.

        P. David Soares, District Attorney, Albany (Brittany L.
Grome of counsel), for respondent.

_____

Mulvey, J.

        Appeal from a judgment of the County Court of Albany County
(Lynch, J.), rendered May 13, 2014, convicting defendant
following a nonjury trial of the crimes of attempted murder in
the second degree, strangulation in the first degree,
strangulation in the second degree and assault in the second
degree (two counts).

        Defendant was charged in a six-count indictment with one
count of attempted murder in the second degree, one count of
strangulation in the first degree, two counts of strangulation in
the second degree and two counts of assault in the second degree.
The charges stem from defendant's May 23, 2013 beating of his 65-
year-old mother (hereinafter the victim).  Defendant waived a
jury trial and County Court found defendant guilty of attempted

murder in the second degree, strangulation in the first degree, strangulation in the second degree and both counts of assault in the second degree. He was sentenced to an aggregate prison term of 21 years with five years of postrelease supervision.

Defendant argues that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. "In determining legal sufficiency, we view the evidence in the light most favorable to the People and give them the benefit of every favorable inference. We will not disturb the verdict if the evidence demonstrates a valid line of reasoning and permissible inferences that could lead a rational person to the conclusion reached by the jury. When we conduct a weight of the evidence review, if we are satisfied that a different verdict would not have been unreasonable, we independently assess the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Baltes, 75 AD3d 656, 658 [2010] [internal quotation marks and citations omitted], lv denied 15 NY3d 918 [2010]).

On May 23, 2013, at approximately 3:30 a.m., the victim was in her apartment getting ready to report to work as a hotel laundry attendant. Three days earlier, she had agreed to let defendant, her 45-year-old son, stay in her spare bedroom for a few days following his 15-year absence. She ventured from her bedroom into the living room to turn off the television. Defendant was sleeping on the couch and when she tried to turn the television off, she accidentally knocked a DVD player onto the floor, waking defendant. Defendant rose up and stared at her. He pushed the victim to the floor, causing her to strike her shoulder and head. After she got up, he ordered her to sit on the couch and watch a movie. He informed her that he was going to get a gun and kill her. When she tried to leave, he punched her in the face causing her to land on her back. Defendant jumped on top of her and began punching her in the face and head with his fists. He dragged her around the room by her hair, then stomped on her with his feet, and kicked her in the breast, stomach, wrists and legs. Defendant retrieved a pair of headphones from his bedroom and started beating the victim in the mouth with them. He tried to open her mouth and shove them down

her throat, raking them across her teeth.  He put his hand around the victim's throat and choked her while she begged for her life. She was unable to breathe and believed that she was dying, testifying at trial that "it all went black."  When she opened her eyes, she saw that defendant was standing by the bedroom with his back to her.  The victim escaped the apartment and, as she was walking down the street toward the police station in her nightgown, a cab driver stopped and drove her to the police station.  She was transported to the hospital and, upon examination, found to have sustained swelling to her right eye, a broken right arm, three distinct fractures to the right side of her face, a subconjunctive hemorrhage in the inner eye and extensive bruising on her face, neck, torso and legs.  At trial, defendant admitted that he grabbed and punched a person in the apartment that morning, believing the person to be an intruder. He ultimately admitted that the person he attacked was his mother, but asserted that he did not realize it at the time.  He also denied ever strangling her, using headphones to beat her or trying to kill her.

Defendant's challenge to the conviction of attempted murder in the second degree centers on the fact that the victim was treated and released from the hospital the same day and that there was no proof of a need for follow-up medical care.  A person is guilty of murder in the second degree, when, with an intent to kill, that person causes the death of another person (see Penal Law § 125.25 [1]).  A person is guilty of an attempt to commit a crime, when, with specific intent to commit such a crime, that person "engages in conduct which tends to effect the commission of such crime" (Penal Law § 110.00).  The "'intent to kill may be inferred from the surrounding circumstances and a defendant's actions'" (People v Stanford, 130 AD3d 1306, 1308 [2015], lv denied 26 NY3d 1043 [2015], quoting People v Hamilton, 127 AD3d 1243, 1245 [2015], lvs denied 25 NY3d 1164 [2015]).  The proof must show that the defendant "engaged in conduct that came dangerously near commission of the completed crime" (People v Kassebaum, 95 NY2d 611, 618 [2001] [internal quotation marks omitted], cert denied 532 US 1069 [2001]).

The brutal beating and choking of the victim, together with defendant's threatening words in the course thereof, clearly demonstrated his intent to kill.  Medical testimony established

that the act of strangling a person to the point where the person loses consciousness is life-threatening due to deprivation of oxygen and blood flow to the brain. The absence of a long-term serious injury to a victim does not preclude the finding of life-threatening actions by a defendant (see People v Greenfield, 112 AD3d 1226, 1227-1228 [2013], lv denied 23 NY3d 1037 [2014]; People v Fernandez, 88 NY2d 777, 783 [1996]). Under these circumstances, we find that the People's proof in support of this charge was legally sufficient and the verdict was not against the weight of the credible evidence.

With regard to count 5 of the indictment, assault in the second degree, defendant contends that the weight of the evidence does not establish that he used headphones in the course of the victim's beating, and that headphones do not constitute a dangerous instrument as defined in Penal Law § 10.00 (13). As relevant here, a person is guilty of assault in the second degree when, "[w]ith intent to cause physical injury to another person, he [or she] causes such injury to such person . . . by means of a deadly weapon or a dangerous instrument" (Penal Law § 120.05 [2]). A dangerous instrument is defined as "any instrument, article or substance . . . which, under the circumstances in which it is used, . . . is readily capable of causing death or other serious physical injury" (Penal Law § 10.00 [13]). We conclude that, in light of the manner in which the headphones were used, as described by the victim here, they qualify as a dangerous instrument (see People v Ray, 273 AD2d 611, 613 [2000]). Defendant notes that the victim did not mention the headphones in her initial report to the police or to the medical providers and that they were not identified at trial. These points merely address the credibility of her assertion that the headphones were used to beat her about the face and mouth. While a different verdict on this count would not have been unreasonable in light of defendant's testimony, after considering the evidence in a neutral light and according due deference to County Court's credibility determinations, we conclude that the verdict on this count is not against the weight of the evidence (see People v Pine, 126 AD3d 1112, 1115-1116 [2015], lv denied 27 NY3d 1004 [2016]).

Turning to the charge of strangulation in the second degree, we reject defendant's contention that there was a lack of evidence of "stupor, loss of consciousness for any period of time, or any other physical injury or impairment" (Penal Law § 121.12). The victim's description of her experience while defendant was squeezing her throat with his hand confirms her loss of consciousness since she testified that she "saw black spots and lights flashing" before "it went all black." She also testified that she lost bladder function. Medical proof confirmed how pressure to the throat leads to a loss of consciousness and loss of bladder control. Further, the strangulation injuries as described by the victim and the medical care providers amply established physical injury, which is defined as "impairment of physical condition or substantial pain" (Penal Law § 10.00 [9]). Photographs of the victim's neck taken several days after the attack confirm bruising consistent with the pressure applied to the victim's neck. We find that this evidence was sufficient as a matter of law (see People v Carte, 113 AD3d 191, 194 [2013], lv denied 23 NY3d 1035 [2014]). Nor was the verdict on this charge against the weight of the evidence, since there was ample basis for County Court to credit the victim's testimony and the medical proof presented by the People.

Finally, we reach the same conclusion as to the proof in support of the charge of strangulation in the first degree, which required the People to prove that the victim sustained a "serious physical injury" (Penal Law § 121.13). To establish this element, the proof must show an injury "which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ" (Penal Law § 10.00 [10]). As noted above, testimony by a pathologist confirmed that the restriction of blood flow to the brain to the extent that it causes unconsciousness, impaired vision and/or loss of motor function is life-threatening. We find that this evidence was legally sufficient to establish the element of serious physical injury because it constituted an impairment of her physical condition creating a substantial risk of death (see People v McCann, 126 AD3d 1031, 1034 [2015], lv denied 25 NY3d 1167 [2015]; People v Miller, 290 AD2d 814, 815

[2002], lv denied 98 NY2d 678 [2002]).

Garry, J.P., Egan Jr., Rose and Clark, JJ., concur.


ORDERED that the judgment is affirmed.




ENTER:

Robert D. Mayberger
Clerk of the Court