People v Williams (2018 NY Slip Op 01756)





People v Williams


2018 NY Slip Op 01756


Decided on March 16, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 16, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, PERADOTTO, DEJOSEPH, AND CURRAN, JJ.


246 KA 15-01222

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
TIMOTHY WILLIAMS, DEFENDANT-APPELLANT. 






FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (SARA A. GOLDFARB OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (NICOLE K. INTSCHERT OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered May 22, 2015. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree, attempted assault in the first degree, assault in the second degree and strangulation in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [1]), attempted assault in the first degree
(§§ 110.00, 120.10 [1]), assault in the second degree (§ 120.05 [2]), and strangulation in the second degree (§ 121.12). Defendant's conviction stems from his brutal assault of his paramour. After defendant found out that the victim had cheated on him, the victim left the residence but returned the next day after defendant had removed his belongings. Defendant sent the victim numerous text messages stating that he would "stab" and "kill" her. The following morning, defendant came to the residence and began to beat the victim. The victim testified that defendant punched her in the head, and the last thing she remembered before waking up in the hospital was defendant squeezing his hands around her neck while saying that he was going to kill her. A neighbor called the police during the incident and, when the police entered the residence, they heard sounds of someone being struck and a male voice saying "I'm going to . . . kill you." In the bathroom, the officers found defendant on top of the motionless victim, punching her while saying "die, bitch." After defendant was secured by the police, he laughed and said, "I'm a nice guy, I didn't cut her throat, yet." The police recovered a bloody serrated knife in the bathtub. The victim sustained, inter alia, cuts to her face and hand and bruising around her neck and shoulders. Medical professionals testified that the cuts were caused by a sharp instrument.
Defendant contends that the verdict is against the weight of the evidence because he did not have the intent to kill the victim, he did not possess the knife, and the victim did not lose consciousness. We reject that contention. Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). The jury was justified in finding defendant's intent to kill based on his threatening messages to the victim, the brutal assault, and his statements during and after the assault (see People v Williams, 154 AD3d 1290, 1291 [4th Dept 2017]; see generally Danielson, 9 NY3d at 348). The jury was also justified in finding that defendant possessed the knife, which was within his reach when the police entered the residence, and used it against the victim (see Penal Law §§ 120.05 [2]; 120.10 [1]; see generally People v Winter, 51 AD3d 599, 600 [1st Dept 2008], lv denied 10 NY3d 966 [2008]), and that defendant caused the victim to lose consciousness when he placed his hands around her neck (see § 121.12; People v Ryder, 146 AD3d 1022, 1025 [3d Dept 2017], lv denied 29 NY3d 1086 [2017]).
Contrary to defendant's further contention, County Court did not err in denying his Batson challenge concerning the People's use of a peremptory challenge to excuse an African-American juror. The prosecutor gave race-neutral reasons for excluding that prospective juror, including her education in psychology (see People v Jiles, 158 AD3d 75, 78 [4th Dept 2017]) and her prior service as a juror (see People v Richie, 217 AD2d 84, 89 [2d Dept 1995], lv denied 88 NY2d 940 [1996]). Defendant did not meet his ultimate burden of establishing that those reasons were pretextual (see People v Torres, 129 AD3d 1535, 1536 [4th Dept 2015], lv denied 26 NY3d 936 [2015]).
Finally, the sentence is not unduly harsh or severe. Contrary to defendant's contention, "the fact that the court imposed a more severe sentence after trial than that offered during plea negotiations does not demonstrate that defendant was punished for exercising his right to a trial" (People v McCallum, 96 AD3d 1638, 1640 [4th Dept 2012], lv denied 19 NY3d 1103 [2012]).
Entered: March 16, 2018
Mark W. Bennett
Clerk of the Court