People v Ackerman (2019 NY Slip Op 04785)





People v Ackerman


2019 NY Slip Op 04785


Decided on June 13, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 13, 2019

109203

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
CRAIG ACKERMAN, Appellant.

Calendar Date: May 1, 2019

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Rumsey, JJ.


Craig Meyerson, Peru, for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



MEMORANDUM AND ORDER
Aarons, J.
Appeal from a judgment of the County Court of Schenectady County (Sypniewski, J.), rendered February 7, 2017, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, burglary in the first degree (two counts), rape in the first degree (two counts), strangulation in the first degree, attempted robbery in the first degree, assault in the second degree (two counts) and endangering the welfare of a child.
In September 2015, defendant entered the apartment of victim A in the middle of the night and strangled, raped and hit her. Victim A's son (hereinafter victim B) woke up and saw defendant punching victim A. Defendant grabbed victim B, threw him back in his room and kicked him. In connection with this incident, defendant was arrested and charged by indictment with attempted murder in the second degree (count 1), two counts of burglary in the first degree (count 2 pertaining to victim A; count 3 pertaining to victim B), two counts of rape in the first degree (counts 4 and 5), strangulation in the first degree (count 6), attempted robbery in the first degree (count 7), two counts of assault in the second degree (count 8 pertaining to victim A; count 9 pertaining to victim B) and endangering the welfare of a child (count 10). Prior to trial, a Wade hearing was held before a Judicial Hearing Officer, who ultimately recommended denying defendant's suppression motion. County Court adopted the Judicial Hearing Officer's recommendation. Following a jury trial in December 2016, defendant was convicted as charged. County Court sentenced defendant, as a violent felony offender, to an aggregate prison term of 75 years, followed by 20 years of postrelease supervision. Defendant appeals. We affirm.
The trial evidence reveals that in September 2015, after victim A went to sleep, she was awakened by a loud noise in the middle of the night. Victim A testified that she then felt hands around her throat and that defendant whispered to her that he was her neighbor. According to victim A, defendant tightened his grip "very hard, so that [she] couldn't even get a whisper out" and pushed her onto her bed. Defendant demanded money, but victim A could not respond and instead hit him in his back to indicate that she could not breathe. Defendant asked victim A "if [*2][she] wanted to die," and she shook her head so as to respond in the negative. Victim A testified that defendant then "barely opened his hands" so that she could whisper. Victim A encouraged defendant to take her car keys and get money that she had in there. Defendant, however, did not leave and positioned himself on top of victim A with his hands still around her neck. Defendant told her to move her leg over. Victim A stated that she started to fight, but defendant tightened his grip on her neck and she blacked out.
Victim B, who was eight years old at the time of trial, testified that he woke up in the middle of the night due to victim A's screaming. When the screaming stopped, victim B went to victim A's bedroom and saw defendant wearing an orange shirt. Defendant told victim B to stay outside and closed the bedroom door. Victim B, however, opened the door and saw defendant punching victim A in the stomach and victim A vomiting. Victim B testified that defendant saw him, grabbed him by the neck, threw him in his bedroom and kicked his face. Victim B then fainted.
Victim A testified that when she regained consciousness, she was vomiting, and she heard victim B screaming. Victim A did not have control of her motor skills and tried to walk to victim B's bedroom. Victim A saw defendant in the hall between the two bedrooms and then defendant ran into victim B's bedroom. Victim A heard victim B "scream again as if he had been hurt again." Victim A stated that defendant then came out of the bedroom, hit her one more time and "staggered out, trying to keep his pants from falling down." Law enforcement officials were eventually called, and victim A and victim B were treated at a hospital.
Defendant argues that the verdict with respect to both counts charging him with rape in the first degree was not supported by legally sufficient proof because the People did not establish the element of sexual intercourse. Defendant, however, did not raise this specific ground in his trial motion to dismiss. Rather, defendant moved to dismiss on the basis that the evidence did not establish that he was the perpetrator of the alleged crimes. Accordingly, defendant's legal sufficiency claim regarding these counts is unpreserved (see People v Taylor, 163 AD3d 1275, 1275-1276 [2018], lv denied 32 NY3d 1068 [2018]; People v Novak, 148 AD3d 1352, 1353 [2017], lv denied 29 NY3d 1084 [2017]). To the extent that defendant makes a weight of the evidence argument as to this element, it is not properly before us given that it was raised for the first time in the reply brief (see People v Blume, 92 AD3d 1025, 1027-1028 [2012], lv denied 19 NY3d 957 [2012]).
Defendant's argument that the proof was not legally sufficient to establish the element of intent for the attempted murder in the second degree charge is unavailing. The record discloses that defendant asked victim A whether she wanted to die and subjected her to prolonged strangulation to the point that she became unconscious. As such, the People's proof was legally sufficient to show that defendant possessed the requisite intent to kill (see People v Ryder, 146 AD3d 1022, 1024 [2017], lv denied 29 NY3d 1086 [2017]). To the extent that defendant raises a weight of the evidence claim as to this element, we find that it is without merit.
Regarding the conviction for strangulation in the first degree and attempted robbery in the first degree, defendant argues that the proof was not legally sufficient to establish that victim A sustained a serious physical injury. Victim A testified that, at the time of trial, she still had blurry vision and that she experienced "a snapping . . . in [her] chest," which she described as "very painful." An emergency room physician who examined victim A at the hospital testified that it was highly likely that victim A lost consciousness due to being strangled and that, based upon her neurological symptoms, including the rupture of her blood vessels, enough force was placed around her neck for both the arteries and veins to be blocked, thereby causing cerebral hypoxia. According to the physician, cerebral hypoxia could lead to death if the pressure around the neck was not relieved. The physician stated that, although a person with an abrupt loss of blood flow to the brain could remain conscious for "maybe [30] seconds," permanent brain damage from blood loss usually occurred within three minutes. The physician could not provide a specific time, but opined that victim A was strangled for longer than 30 seconds and that her symptoms were a typical result of a prolonged period of cerebral hypoxia. Meanwhile, victim A [*3]testified that approximately "[t]wo and a half minutes" passed from the moment that she encountered defendant to when she passed out and, during that entire time, defendant kept his hands around her throat. In our view, this evidence was legally sufficient to prove the element of serious physical injury (see People v Ryder, 146 AD3d at 1025; People v Miller, 290 AD2d 814, 815 [2002], lv denied 98 NY2d 678 [2002]). Defendant's weight of the evidence claim regarding the element of serious physical injury was improperly raised for the first time in his reply brief (see People v Blume, 92 AD3d at 1027-1028).
Defendant contends that the verdict with respect to all charges was against the weight of the evidence because the proof did not demonstrate that he was the perpetrator. We disagree. Although victim A did not identify defendant as the assailant, she knew of him because he had previously introduced himself as a cleaner for her landlord and had asked her if she wanted to see or use his cleaning van. At trial, victim B testified that he recognized the assailant as the person who had asked victim A if she would like to go into his cleaning van. The record also discloses that a shirt that victim B described that the assailant was wearing the night of the incident was discovered in defendant's apartment, boxer shorts that were found in victim A's apartment after the incident had defendant's DNA, a screwdriver that was also found in victim A's apartment matched a tool set owned by defendant and defendant's supervisor testified that defendant was scheduled to work on the night in question but failed to come in. An inmate, who befriended defendant while they were incarcerated, testified that defendant told him about an incident where he broke into an apartment, forced himself on top of "this girl" to try to have sex with her, choked her and identified himself to her as a neighbor. Although a contrary result would not have been unreasonable, viewing the evidence in a neutral light, we are satisfied that the verdict was supported by the weight of the evidence (see People v Wilson, 164 AD3d 1012, 1015 [2018]).[FN1]
Defendant's contention that the identification testimony provided by victim B should not have been admitted is unpreserved in the absence of an objection, a motion to strike such testimony or a request for a limiting instruction (see People v Brooks, 26 AD3d 596, 597 [2006]). Defendant also did not object or raise any issue with respect to County Court's voir dire of victim B in determining whether he was competent to testify at trial and, therefore, any challenge thereto is likewise unpreserved (see CPL 470.05 [2]). Were this issue before us, we would find, based upon our review of the court's questioning of victim B, no abuse of discretion in the court's determination that victim B was competent to testify (see People v Miller, 295 AD2d 746, 747-748 [2002]; People v Dehler, 216 AD2d 643, 644 [1995], lv denied 86 NY2d 734 [1995]).
Defendant contends that the photo array was unduly suggestive because he appeared taller than the other males in the array, and he was the only one with a shirt unbuttoned at the collar that exposed his skin. This specific argument, however, is unpreserved for our review given that defendant did not raise it before the Judicial Hearing Officer at the Wade hearing (see People v Davis, 18 AD3d 1016, 1017 [2005], lv denied 5 NY3d 805 [2005]). In any event, defendant's argument as to the discrepancies in each photo in the array is without merit (see People v Matthews, 101 AD3d 1363, 1364 [2012], lvs denied 20 NY3d 1101, 1104 [2013]). Furthermore, the Judicial Hearing Officer found that the backgrounds in each photo were "similarly nondescript and plain" and that the six males depicted in the array were "sufficiently similar in appearance." Upon our review of the photo array and given that the Judicial Hearing Officer's findings are entitled to great weight, we conclude that the photo array was not unduly suggestive (see People v Hawkins, 167 AD3d 1071, 1073 [2018]; People v Smith, 157 AD3d 978, 979 [2018], lvs denied 31 NY3d 1087 [2018]).
Finally, taking into account the violent and heinous nature of the committed crimes, and in the absence of any extraordinary circumstances or abuse of discretion, we find that the imposed sentence was not harsh or excessive (see People v Mathews, 134 AD3d 1248, 1251 [2015]; People v Blackman, 90 AD3d 1304, 1310-1311 [2011], lv denied 19 NY3d 971 [2012])[FN2]. Contrary to defendant's assertion, County Court did not err when it ordered that the concurrent sentences imposed upon his convictions of counts 3, 9 and 10 — charges that related to the attack on victim B — run consecutively to the sentences imposed upon his convictions of counts 1, 2, 4, 5, 6, 7 and 8 — charges that related to the attack on victim A (see People v Jeanty, 268 AD2d 675, 680 [2000], lvs denied 94 NY2d 945, 949 [2000]; People v Jenkins, 256 AD2d 735, 737 [1998], lv denied 93 NY2d 854 [1999]). Nor did the court err in directing that the sentence imposed on count 4 (rape in the first degree by forcible compulsion) run consecutively to the concurrent sentences imposed on counts 1, 2, 5, 6, 7 and 8 given that these offenses arose from separate and distinct acts (see People v Webb, 184 AD2d 920, 921 [1992], lv denied 80 NY2d 935 [1992]; People v Wales, 138 AD2d 766, 769 [1988], lv denied 72 NY2d 868 [1988]). Indeed, "the fact that the offenses were committed within a brief period does not constitute one continuous act warranting the imposition of concurrent sentences" (People v Kownack, 20 AD3d 681, 682 [2005]). Defendant's remaining arguments, including his claim that he received the ineffective assistance of counsel, have been examined and are without merit.
Egan Jr., J.P., Lynch, Devine and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: In view of our determination, defendant's argument that the instructions to the grand jury were defective is precluded (see People v Gaston, 147 AD3d 1219, 1223 n 2 [2017]; People v Carter, 140 AD3d 1394, 1396 [2016], lv denied 28 NY3d 969 [2016]) and, in any event, is without merit.

Footnote 2: The aggregate prison sentence of 75 years is reduced, by operation of law, to 50 years (see Penal Law § 70.30 [1] [e] [vii]; People v Hartle, 159 AD3d 1149, 1150 n [2018], lv denied 31 NY3d 1082 [2018]).